[No. F019825. Fifth Dist. Nov. 14, 1994.]

THE PEOPLE, Plaintiff and Respondent, v.
MARTIN SANTOS et al., Defendants and Appellants.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts 2, 3 and 4.

## COUNSEL

Kyle Gee, Carlo Andreani and Jim Fahey, under appointments by the Court of Appeal, for Defendants and Appellants.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, Maureen A. Daly and Gregory W. Baugher, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**BUCKLEY, J.**—Defendants Martin Santos, Chad Powers and Jose Johnny Romero were involuntary residents of the Sierra Conservation Center, a

penal institution located in Jamestown, California. Early in the morning of May 3, 1992, defendants attacked fellow inmate Rene Villareal, beating and stabbing him several times. The attack turned into a generalized brawl in which numerous other inmates, including defendants, suffered various minor injuries. Defendants were each convicted after jury trial of a violation of Penal Code[1] section 4501 (aggravated assault by a state prison inmate not serving a life sentence).

All three appeal from conviction, alleging several bases for reversal. Of the issues raised, only one has merit.

In the published portion of this opinion, we hold that the due process clause of the federal Constitution compels disclosure of misdemeanor convictions of witnesses when requested by defendant. However, the court's error in denying defendants' request therefor was harmless and we will affirm.

### STATEMENT OF FACTS

Within the California prison system, there is a long-standing feud between two rival groups of inmates, the northern Hispanics and the southern Hispanics. At trial, testimony was elicited that the two factions are "continuously at war. . . . [A] lot of major disturbances occur because of that." Defendants and prosecution witness Jimmy Rios are all southern Hispanics; Villareal is a northern Hispanic. Not surprisingly, the attack appears to have been connected with the continuing feud between the two groups.

In May 1991, building 3 of the Tuolumne unit at the Sierra Conservation Center was a two-story building containing two tiers of cells. A control booth was located about 12 feet off the ground, providing visibility of both the upper and lower tiers. Victim Villareal and his cellmate, Ray Martinez, were in cell 134 on the lower floor. Rios was housed next door in cell 136. Defendant Santos and Jason Marrujo were cellmates, as were defendants Romero and Powers.

On May 1, 1991, Santos and Martinez got into a dispute concerning shower usage. Rios testified that immediately afterward he heard Santos tell Marrujo that he wanted a "shank" to "stick" Martinez. Later, Powers showed Rios a sharpened spoon and told him to be ready because they were going after Martinez. Powers asked him if he had a "shank" and offered him the spoon. Powers told Rios he was going with Santos "to keep Martinez's cellie away." Rios also testified that a southern Hispanic inmate leader named Mariscal told him that Santos and Powers were "going to deal with Martinez" and that he should be ready to assist them.

---

[1] All statutory references are to the Penal Code unless otherwise noted.

Shortly after 6:30 a.m. on the morning of May 3, 1992, Correctional Officer Vincent Stobaugh entered the control booth and began flipping switches to electronically open the cell doors to release the inmates for breakfast. Rios testified that as the cell doors were being unlocked he looked through the window of his cell door and saw Santos and Marrujo[2] quickly leave their cell and walk to cell 134. Santos was carrying a shank, which looked like an ice pick, and Marrujo was holding half of a pair of scissors.

Villareal testified that he was lying on the bottom bunk in his cell that morning while Martinez was getting ready for breakfast. After the cell door opened, some people rushed in and started hitting him. Villareal struck back, trying to defend himself. Villareal felt someone at his feet, later identified as Powers, and kicked him off. Santos placed his arm around Villareal's head, choking him. Santos was punching him with his free hand. Something "shiny" was protruding from his left hand. A third inmate, identified at trial as Romero,[3] was punching Villareal in the middle of his body. He had "something black" in his hand. Despite his resistance, Villareal suffered approximately six stab wounds in the left arm, three or four stab wounds in the chest area, and four stab wounds in the abdominal area. A weapon was found later in Villareal's bunk.

Martinez told an investigating officer that he was lying in the top bunk at the time of the attack. Out of the corner of an eye he saw an inmate rush toward him. The inmate stood on a stool next to the bunk and attempted to stab him. Martinez threw a blanket over him and jumped to the floor. The two began struggling. Martinez refused to identify this individual. However, Martinez did identify Santos, Powers, Marrujo and an uncharged inmate, Mendoza, as being outside cell 134. Villareal testified Santos and Martinez had struggled when Santos attempted to leave the cell.

At approximately the same time Villareal and Martinez were attacked, a fight broke out in front of cell 128. The two inmates initially involved were identified as Mariscal and Lucero. Other inmates, including Marrujo, quickly joined the fray. Correctional officers ran toward cell 128 and tried to restrain the combatants. Powers attempted to enter cell 128 but was restrained by Correctional Officer Felipe Nolasco.

Correctional Officer Stobaugh restored order by firing a shot. Villareal was transported to a local hospital.

[2]Marrujo was charged with violation of section 4502 (possession of a deadly weapon by a prisoner) and was tried with Santos, Romero and Powers. Although convicted as charged, he did not join in the instant appeal.

[3]During his testimony Villareal initially identified Marrujo as the third assailant. However, he subsequently identified Romero.

Correctional Officer Thomas Vaupel recovered a sharpened half-pair of scissors from Santos.[4] There was blood on Santos's pants and he had small facial injuries around his left eye, a bloodstain on his forehead and a small cut on the palm of his right hand. Analysis of stains on Santos's pants indicated they were consistent with Villareal's blood. Santos's bloodstained palm print was found on the toilet seat in Villareal's cell.

When interviewed by Investigative Sergeant Karl Lietaker on May 8, 1992, Santos denied attacking Villareal. However, he admitted fighting with a northern Hispanic inmate outside of cell 134. When asked about the weapon, Santos told the officer that after he went to the ground he observed it next to him, wrapped in toilet paper. He saw someone else reach for it and, fearing for his safety, grabbed it. When he saw correctional officers looking at him, he threw it away. He also admitted arguing with a northern Hispanic over the shower but claimed the dispute had been resolved.

Powers had scratches on the top of his head and on one of his arms and his clothing was bloodstained. Powers testified he was not involved in the attack on Villareal. Rather, he claimed to have seen Mariscal and Lucero fighting and decided to come to Mariscal's rescue. He joined the fight, hitting Lucero twice.

Romero was not found in the area of the brawl and was not directly tied to any of the recovered weapons. However, on May 4th he was seen limping and had abrasions on his hands, a scrape on his ear and he had a large "road burn" on his forehead; the injuries were consistent with his having been in a fight. Romero testified he was asleep in his cell on the second tier during the altercation. He claimed to have received the bodily injuries while playing soccer; however, correctional officers observed that he had no abrasions on his knees as one would expect had the injuries been sustained during a soccer game.

DISCUSSION

1.  *Discovery of Rios's and Villareal's Rap Sheets.*

Villareal testified on direct examination that he had a 1981 burglary conviction, a 1982 forgery conviction and had suffered a conviction for escape in 1989. During cross-examination he testified he had recently been convicted of grand theft. Villareal stated these four were his only felony convictions.

Relying on *Hill* v. *Superior Court* (1974) 10 Cal.3d 812, 820-823 [112 Cal.Rptr. 257, 518 P.2d 1353, 95 A.L.R.3d 820] (hereafter *Hill*), and *In re*

---

[4] A similar weapon was found near Marrujo, who was lying on the ground near the stairway.

*Ricky B.* (1978) 82 Cal.App.3d 106, 113-115 [146 Cal.Rptr. 828], Santos sought discovery of Villareal's rap sheet, a request which was later broadened to include Jimmy Rios's rap sheet. Santos's counsel argued the purpose of discovering the rap sheets went beyond verifying that all felony convictions had been disclosed. He also sought to discover any potential impeachment evidence regarding the time and circumstances of the prior felonies and to learn of any misdemeanor convictions involving moral turpitude.

The trial court first stated that because Villareal had suffered four felony convictions in the preceding ten years, "the Court would find that proving any misdemeanor priors, if there were any, would probably take more time than—the time would outweigh the probative value under the circumstances." The court ultimately denied the discovery request, reasoning that section 1054, subdivision (e) "would supersede prior California case law on the issue."

On appeal, defendants again rely on *Hill, supra,* 10 Cal.3d 812, and *In re Ricky B., supra,* 82 Cal.App.3d 106, arguing these cases stand for the proposition that rap sheets are discoverable. However, in *People v. Roberts* (1992) 2 Cal.4th 271 [826 P.2d 274, 6 Cal.Rptr.2d 276] (hereafter *Roberts*), the Supreme Court rejected this interpretation of its earlier holding, writing *"In Hill v. Superior Court* [citation], we decided that rap sheets themselves need not be disclosed, but that a trial court should exercise its discretion in favor of allowing the defense to discover all felony convictions when good cause is shown for the discovery and it does not appear the disclosure will unduly hamper the prosecution or impair some other legitimate government interest." (2 Cal.4th at p. 308, italics added.) The court concluded that in the instance before it the lower court had abused its discretion by failing to allow discovery of the prosecution witness's felony convictions. However, it expressly stated,"[*t*]*he rap sheets themselves, of course, did not have to be disclosed in order to provide the requested information." (Ibid.)* Roberts reaffirms *Hill'*s holding that "[i]f the prosecution has, or obtains, [the witness's] 'rap sheet,' if it exists, *only* the record of felony convictions need be disclosed." (*Hill, supra,* 10 Cal.3d at p. 821, italics added.) Therefore, defendants' reliance on *Hill* and its progeny, *In re Ricky B., supra,* 82 Cal.App.3d 106, is misplaced.

Further, "[e]vidence of prior felony convictions offered for [impeachment] purpose[s] is restricted to the name or type of crime and the date and place of conviction." (*People v. Allen* (1986) 42 Cal.3d 1222, 1270 [232 Cal.Rptr. 849, 729 P.2d 115].) Inquiry into the circumstances and underlying facts of the felony is prohibited when the evidence is offered for impeachment purposes only. (*Ibid.; People v. Heckathorne* (1988) 202 Cal.App.3d

458, 462 [248 Cal.Rptr. 399].) Thus, the rap sheets themselves are not discoverable.

Of all the defendants, only Santos recognized the weakness of this position and raised another line of argument. ██ ██ In his reply, Santos argued the true issue before this court is whether, "After the Supreme Court determined in *People* v. *Wheeler* (1992) 4 Cal.4th 284, 295 [14 Cal.Rptr.2d 418, 841 P.2d 938] that past criminal conduct reflecting moral turpitude is admissible for impeachment—whether amounting to a felony or a misdemeanor—do the due Process Clause of the United States Constitution and Penal Code section 1054.1, subsection (e), require the prosecution to disclose to a defendant evidence of prior misdemeanors evidencing moral turpitude, under the broad heading of '[a]ny exculpatory evidence'?" Santos is correct; since one of the asserted purposes for discovery of the rap sheets was to learn of misdemeanor convictions, this issue must be resolved.[5]

██ Generally, a witness's felony convictions must be disclosed to the defense even if they are inadmissible. (§ 1054.1, subd. (d).) In *People* v. *Wheeler* (1992) 4 Cal.4th 284 [14 Cal.Rptr.2d 418, 841 P.2d 938], filed nearly nine months after *Roberts, supra*, 2 Cal.4th 271, the high court concluded, "if past criminal conduct amounting to a misdemeanor has some logical bearing upon the veracity of a witness in a criminal proceeding, that conduct is admissible, subject to trial court discretion, as 'relevant' evidence under section 28(d)."[6] (4 Cal.4th at p. 295.) However, the court also held, "that evidence of a misdemeanor *conviction*, whether documentary or testimonial, is inadmissible hearsay when offered to impeach a witness's credibility." (*Id.* at p. 300.) Misdemeanor misconduct must be proven by "other, more direct means, including a witness's admission on direct or cross-examination that he or she committed such conduct." (*Id.* at p. 300, fn. 14; see also *People* v. *Scott* (1993) 17 Cal.App.4th 405, 411 [21 Cal.Rptr.2d 193].)

Section 1054 was enacted by the voters in 1990 as part of Proposition 115. (*People* v *Hayes* (1992) 3 Cal.App.4th 1238, 1244 [5 Cal.Rptr.2d 105].) This section provides, in relevant part, "that no discovery shall occur in criminal

---

[5]The People did not address this issue.

[6]"Section 28(d) [of Cal. Const., art. I (Prop. 8)] provides: 'Except as provided by statute hereafter enacted by a two-thirds vote of the membership in each house of the Legislature, relevant evidence shall not be excluded in any criminal proceeding, including pretrial and postconviction motions and hearings, or in any trial or hearing of a juvenile for a criminal offense, whether heard in juvenile or adult court. Nothing in this section shall affect any existing statutory rule of evidence relating to privilege or hearsay, or Evidence Code, Sections 352, 782 or 1103. Nothing in this section shall affect any existing statutory or constitutional right of the press.' " (*People* v. *Wheeler, supra*, 4 Cal.4th at p. 291, fn. 3.)

cases except as provided by this chapter, other than express statutory provisions, or as mandated by the Constitution of the United States." (§ 1054, subd. (e).) Section 1054.1, subdivision (e) provides that the prosecuting attorney shall disclose to the defendant or his attorney "[a]ny exculpatory evidence." Santos argues the misdemeanor convictions are exculpatory evidence and therefore disclosure is mandatory.

We do not perceive evidence of a witness's misdemeanor conviction as being "exculpatory." Such evidence does not tend to demonstrate the defendant is free from guilt and it does not demonstrate the defendant was in fact innocent of the charged crime. Accordingly, disclosure of the misdemeanor conviction is not required by section 1054.1, subdivision (e).

However, the question remains whether the federal Constitution mandates disclosure of misdemeanor convictions when such information is requested by the defendant and is in the prosecutor's possession.[7] We answer this question in the affirmative. In *People v. Hayes, supra,* 3 Cal.App.4th 1238, the First District Court of Appeal wrote: "In addition to the prosecutor's obligations under section 1054.1, the due process clause of the United States Constitution imposes a duty on the prosecution to disclose ' ". . . all substantial material evidence favorable to an accused . . . ," ' regardless of whether the accused makes a discovery request. [Citation.] This duty is *'wholly independent* of any statutory scheme of reciprocal discovery.' [Citation.] Moreover, no statutory discovery scheme can limit a defendant's due process right of discovery; such rights operate outside of any statutory scheme." (3 Cal.App.4th at p. 1244, see also *Izazaga v. Superior Court* (1991) 54 Cal.3d 356, 378 [285 Cal.Rptr. 231, 815 P.2d 304].) This constitutional duty of disclosure: " 'extends to evidence which may reflect on the credibility of a material witness. [Citation.] . . . "[S]uppression of substantial material evidence bearing on the credibility of a key prosecution witness is a denial of due process . . . ." [Citation.]' [Citation.] Thus, '[w]hen the "reliability of a given witness may well be determinative of guilt or innocence," nondisclosure of evidence affecting credibility' may require a new trial. [Citation.]" (*People v. Hayes, supra,* 3 Cal.App.4th at pp. 1244-1245, fns. omitted.) Thus, the appellate court found error in the trial court's denial of appellant's motion for discovery of " 'the alleged victim's criminal convictions, pending charges, status of being on probation, any acts of victim's dishonesty and, any prior false reports of sex offenses by the victim.' " (3 Cal.App.4th at pp. 1243, 1245.)

Evidence of prior misdemeanor misconduct is likewise admissible because of its potential impact on credibility. (*People v. Wheeler, supra,* 4 Cal.4th at

---

[7]Whether disclosure is required absent request by the defendant is not before this court and will not be addressed.

pp. 295-296.) While the actual record of the misdemeanor convictions involving moral turpitude is inadmissible hearsay, disclosure of the existence of such convictions will certainly assist the defendant in obtaining direct evidence of the misdemeanor misconduct itself. Therefore, the trial court erred by not allowing discovery of any misdemeanor convictions involving moral turpitude. (*Ibid.*; *People* v. *Hayes*, *supra*, 3 Cal.App.4th at pp. 1244-1245.)

■ However, the error was harmless. In *People* v. *Wheeler*, *supra*, 4 Cal.4th 284, the Supreme Court stated that admission of evidence of prior misdemeanor misconduct was subject to the broad discretion granted the trial court pursuant to Evidence Code section 352. (4 Cal.4th at pp. 296-297.) Here, the trial court made an express finding that because Villareal had already been impeached with the four felony convictions he had suffered in the last ten years, the probative value of any misdemeanor misconduct would be outweighed by the undue consumption of time necessary to prove the offending conduct. This is a proper ground to exclude such evidence and the trial court's ruling is supported by the record.

No similar analysis was undertaken as to the admissibility of proof of misdemeanor misconduct in which witness Rios may have engaged. Thus, we must consider the effect on each of the defendants of the failure to disclose any possible misdemeanor convictions Rios may have suffered. ■ *People* v. *Hayes*, *supra*, 3 Cal.App.4th 1238, sets forth the correct standard of review: "Failure to disclose relevant impeachment evidence requires reversal ' "only if the evidence is material in the sense that its suppression undermines confidence in the outcome of the trial." [Citation.] Otherwise stated, reversal is required "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." [Citation.]' [Citation.]" (3 Cal.App.4th at p. 1245.)

■ Santos was not prejudiced by the court's error. The evidence against him was very strong: he was found with a weapon, his hands were injured, his pants were stained with Villareal's blood, his palm print was found inside the cell and he was identified by Villareal as one of his attackers. Rios's testimony was not crucial to the conviction.

Even if Romero and Powers are not deemed to have waived the issue by failure to join in Santos's motion below, the error was harmless as to them as

well.[8] Romero's conviction was not dependent on Rios's testimony. In fact, Rios's testimony he did not see Romero enter cell 134 was actually helpful to Romero's defense because it is consistent with his claim that he was in his cell asleep at the time of the attack.

While Rios's testimony was more critical to the case against Powers, it was not of such importance that the error mandates reversal. Rios did not identify Powers as one of the individuals who entered cell 134 on the morning of the attack. It was Villareal who consistently identified Powers as one of his attackers, specifically identifying the "Playboy" tattoo Powers sports across his chest. Powers also admitted being involved in the brawl and had scratches on one hand and blood on his shirt.

Moreover, Rios's credibility was severely undermined after he was impeached with two felony convictions for voluntary manslaughter and arson. As explained in *People v. Wheeler, supra,* 4 Cal.4th at page 296, "[i]n general, a misdemeanor—or any other conduct not amounting to a felony —is a less forceful indicator of immoral character or dishonesty than is a felony." If Rios, in fact, had engaged in misdemeanor misconduct demonstrating moral turpitude and if the trial court had found proof of this conduct to be admissible, it is highly unlikely this evidence would have been of sufficient import as to substantially affect the jury's impression of Rios's veracity, already severely damaged by knowledge of his multiple serious felony convictions.

Therefore, because there is no reasonable probability the results of the proceeding would have been different for any defendant had the requested discovery been permitted, reversal is not required.

2.-4.*

. . . . . . . . . . . . . . . . . . . . . . . . . .

### DISPOSITION

The judgment is affirmed.

Ardaiz, P. J., and Dibiaso, J., concurred.

---

[8]Generally, failure to join in the objection or motion of a codefendant constitutes a waiver of the issue on appeal. (*People v. Mitcham* (1992) 1 Cal.4th 1027, 1048 [5 Cal.Rptr.2d 230, 824 P.2d 1277].)

*See footnote, *ante*, page 169.