[No. B186837. Second Dist., Div. Eight. Aug. 14, 2006.]

THE PEOPLE, Plaintiff and Respondent, v.
GIOVANNI RAMIREZ, Defendant and Appellant.

COUNSEL

John P. Dwyer, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Keith H. Borjon and Sharlene A. Honnaka, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

RUBIN, Acting P. J.—

## INTRODUCTION

Appellant Giovanni Ramirez pleaded nolo contendere to one count of armed robbery and evading arrest. As part of his plea agreement, two counts of carjacking and one count of unlawful driving were dismissed. He claims that before he entered his plea, the prosecutor should have provided to him a supplemental police report containing exculpatory information. This appeal follows the denial of his motion to withdraw his plea under Penal Code section 1018. We reverse and remand to allow appellant the opportunity to withdraw his plea.[1]

## FACTUAL AND PROCEDURAL BACKGROUND

The complaint alleged five felony counts stemming from a group of crimes committed on January 1, 2005: (1) carjacking, (2) armed carjacking, (3) armed robbery, (4) unlawful driving of a vehicle, and (5) evading police.

### 1. *The Crimes as Described in the Initial Police Reports*

At 6:05 p.m. on January 1, 2005, a Mini Cooper automobile belonging to A.G. and J.G. was carjacked. The Mini Cooper was boxed in by a Toyota Corolla and a pickup. A Black male exited the Corolla, pointed a gun at A.G., and demanded the car and her purse. A Hispanic male took her keys and purse and drove off in the Mini Cooper; the other vehicles followed. There were two additional unknown male suspects. J.G. later identified the gunman from a photo lineup as a gang member by the name of T-Mac. Another witness had seen T-Mac at 6:00 p.m. that evening near the location of the carjacking, driving a Toyota Corolla with three male Hispanic passengers.

Later that same evening, a man approached Bryan B., pointed a gun at him, demanded his wallet, and threatened to kill him. After the victim handed

---

[1] Appellant also contends the trial court erred in denying his motion to withdraw his plea under *Brady v. Maryland* (1963) 373 U.S. 83 [10 L.Ed.2d 215, 83 S.Ct. 1194] (*Brady*) for withholding exculpatory material. Because we reverse on statutory grounds, we need not address the claimed *Brady* violation. The trial court also denied his motion to dismiss the complaint under *Brady*. Dismissal is unwarranted because any prejudice to appellant is cured by allowing him to withdraw his plea and proceed to preliminary hearing and trial. (*Government of Virgin Islands v. Fahie* (3d Cir. 2005) 419 F.3d 249, 255, fn. 7; *U.S. v. Kearns* (9th Cir. 1993) 5 F.3d 1251, 1254 [dismissal is appropriate sanction for a *Brady* violation only where less drastic alternatives are not available].) Although bad faith *Brady* errors may warrant dismissal (*Government of Virgin Islands v. Fahie*, at pp. 254–255), appellant does not assert bad faith.

All further undesignated section references are to the Penal Code.

over his personal property, the robber ran back to his waiting car and fled. Bryan B. described the car as a "small compact vehicle." He later identified appellant from a photo lineup as the man who had robbed him.

At 10:45 p.m., police saw the Mini Cooper speeding and pursued it. Appellant, the driver, was the only occupant. He crashed the car into a tree and tried to exit the driver's side, then left by the passenger side and was taken into custody. T-Mac was riding a bicycle around the collision, smiling and gesturing to appellant. Inside the Mini Cooper, officers found Bryan B.'s personal property, a cell phone belonging to appellant's mother, and a Taser gun.

### 2. The Plea Bargain and Appellant's No Contest Pleas

Appellant initially pleaded not guilty to all counts. Based on the initial police reports, and told by the court that he faced a maximum prison sentence of 17 years 8 months and three strike priors, appellant accepted a plea offer of a 12-year prison sentence, one strike prior, and dismissal of the remaining counts. On February 3, 2005, appellant entered his no contest plea to armed robbery and evading arrest. Sentencing was scheduled for February 22 and later continued for appellant's motion to withdraw his plea.

### 3. The Supplemental Police Report

After the plea but prior to sentencing, appellant's counsel learned of a second, previously undisclosed supplemental police report. According to this report, appellant's neighbor, Ricky Davila, approached police and told them Vladimir Guzman was involved in the carjacking. Davila said he was in the parking lot behind his home when Guzman drove up to the apartment complex in a gray Mini Cooper. Guzman went to appellant's apartment and asked him to go for a ride. Davila said that appellant was initially hesitant to get in the car, but appellant agreed after Guzman told him the car was not stolen. About 45 minutes later, Guzman returned alone, his body scratched and with a black handgun tucked in his waistband. Guzman started talking about the Mini Cooper, saying he and appellant were in a car chase with police, but he had escaped. Guzman told Davila he had taken the Mini Cooper from two people at a motel on January 1, and T-Mac was with him. He said T-Mac was present at the carjacking, and he remembered the date, January 1, because it was T-Mac's birthday.

Davila contacted police on January 18 to report another conversation he had with Guzman. Guzman said an acquaintance had been arrested carrying the gun Guzman had used in the carjacking. Davila gave police a photograph of Guzman and some personal property Davila had bought from Guzman,

property that belonged to A.G. and to a victim of another robbery.[2] Davila said he felt sorry because appellant was being punished for the carjacking when Guzman was the culprit.

The supplemental report also indicated that a bystander named Anthony Pera had seen a man, later identified as Vladimir Guzman, exit the bushes near the Mini Cooper moments after it crashed. Guzman told Pera he was hiding from police and asked for a ride. A.G. and J.G. identified Guzman from a photo lineup as the man who drove away in their Mini Cooper. They did not identify appellant.[3]

On January 25, before appellant's plea, police arrested and interviewed Guzman. Guzman said that on January 1, he was driving around with T-Mac. T-Mac stopped in front of a car, got out, and "took a ladies [*sic*]" purse. Guzman drove off with the woman's car and cruised around a while, then let appellant drive. Appellant dropped Guzman off and later returned, saying the police chased him, but he had escaped. Guzman got into the passenger seat and left with appellant driving the Mini Cooper. The police chased them, and appellant crashed the car into a tree. Guzman ran up the street and went undetected, but police caught appellant.

### 4. *Appellant's Motion to Withdraw His No Contest Plea*

Appellant moved to withdraw his no contest plea under section 1018, contending that because he was unaware of the second police report, his plea was not entered knowingly, voluntarily, and intelligently.

The trial court denied the motion, sentenced appellant according to the plea agreement to 12 years in state prison, and dismissed the remaining counts.

Appellant timely filed a request for a certificate of probable cause, which the trial court granted.

### DISCUSSION

Appellant contends the trial court erred in denying his motion to withdraw his no contest plea under section 1018. Appellant argues his plea was not

---

[2] The victim confirmed he had been robbed and identified Guzman as the robber.

[3] Neither Guzman nor T-Mac was tried with appellant.

knowing and voluntary because he was ignorant of the information in the supplemental report. We agree.

■ Section 1018 provides that "[o]n application of the defendant at any time before judgment . . . the court may . . . for . . . good cause shown, permit the plea of guilty to be withdrawn and a plea of not guilty substituted. . . . This section shall be liberally construed to effect these objects and to promote justice." A no contest plea is treated the same as a guilty plea for this purpose. (§ 1016, subd. 3; *People v. Rivera* (1987) 196 Cal.App.3d 924, 926–927 [242 Cal.Rptr. 191].) ■ "Mistake, ignorance or any other factor overcoming the exercise of free judgment is good cause for withdrawal of a guilty plea," but must be shown by "clear and convincing evidence." (*People v. Cruz* (1974) 12 Cal.3d 562, 566 [116 Cal.Rptr. 242, 526 P.2d 250].) The state's suppression of favorable evidence is an extrinsic cause which may overcome the exercise of free judgment. (*People v. Dena* (1972) 25 Cal.App.3d 1001, 1009 [102 Cal.Rptr. 357].)

We review a trial court's denial of a motion to withdraw a plea under section 1018 under an abuse of discretion standard. (*People v. Fairbank* (1997) 16 Cal.4th 1223, 1254 [69 Cal.Rptr.2d 784, 947 P.2d 1321].)

Here, the prosecution had ample time to provide appellant with a copy of the supplemental report, but failed to do so until after he entered his plea.[4] Davila's statements regarding the night of the carjacking were made on January 12, 2005. Appellant entered his plea nearly three weeks later on February 3. The last entry in the report, Guzman's arrest and interview, was on January 25, still over a week before appellant's plea.

The new information was favorable to appellant and cast the case against him in a different light by significantly weakening the evidence supporting the carjacking charges. Appellant did not know when he entered his plea that the police had identified a witness who could testify in his favor. This witness, Ricky Davila, said appellant was home when Guzman drove up in the Mini Cooper. Significantly, Davila described appellant as "hesitant" to get in the Mini Cooper until told the car was not stolen. This suggests appellant was not familiar with the car and did not know it was stolen when Guzman arrived. If appellant had participated in the carjacking, he would have known of the car theft, and Guzman would not have needed to reassure him. Other portions of the supplemental report are consistent with this inference. For example, the victims identified Guzman and T-Mac, but not appellant, as the men involved in the carjacking, and Guzman implicated T-Mac, but not appellant, as an accomplice.

---

[4] The People do not claim the prosecutor was unaware of the supplemental report at the time of the plea, nor does the record reflect appellant or his attorney received the report before the plea.

The supplemental report also contained evidence that might have supported other possible defenses to the other charges. Appellant claims Davila's statements show he lacked the specific intent for unlawful driving because he did not intend to deprive the owner of possession. (Veh. Code, § 10851, subd. (a).) He also argues the supplemental material supports a defense to the evading charge because Guzman, not he, was driving the Mini Cooper when pursued by police.

Appellant argues his ignorance of the second report materially affected his decision to accept the plea agreement. We agree that his showing was sufficient. Appellant's theory was that he pleaded no contest because of his mistaken belief that "there was no favorable evidence to my case, that I had no way to fight my case, that I would lose the case and that I could get over 20 years in prison." In reality, the police had identified a witness who could testify in appellant's favor as to the carjacking charges. Appellant's trial counsel also declared the supplemental report "would have affected my evaluation of the case, and would have altered my advice to Mr. Ramirez regarding whether he should accept the plea bargain agreement. [¶] . . . [¶] . . . I would have advised Mr. Ramirez to go forward with the preliminary hearing before deciding whether or not to accept the plea bargain offer."

Although the most favorable information went to charges that were ultimately dismissed, the report still altered appellant's potential custody exposure. Based on the initial police material, the court had informed appellant that he faced a maximum sentence of 17 years 8 months and three strike priors. The carjacking charges accounted for two of the three potential strikes. By excluding those charges, his maximum exposure was reduced to 15 years 8 months and one strike prior. The plea agreement gave appellant 12 years with one strike. Although still a significant sentence, the potential elimination of the carjacking charges and strikes would have altered plea negotiations.

Under these facts, we conclude the trial court abused its discretion in denying the motion to withdraw. As the court in *People v. McGarvy* proclaimed, " 'the withdrawal of a plea of guilty should not be denied in any case where it is in the least evident that the ends of justice would be subserved by permitting the defendant to plead not guilty instead; and it has been held that the least surprise or influence causing a defendant to plead guilty when he has any defense at all should be sufficient cause to permit a change of plea from guilty to not guilty.' " (*People v. Dena, supra,* 25 Cal.App.3d at pp. 1012–1013, quoting *People v. McGarvy* (1943) 61 Cal.App.2d 557, 564 [142 P.2d 92]; see also 4 Witkin & Epstein, Cal. Criminal Law (3d ed.) Pretrial, § 292, p. 508.)

Here, appellant has established by clear and convincing evidence that the prosecution's withholding of favorable evidence affected his judgment in

entering his plea, rendering the waiver of rights involuntary. The fact that the new information did not uncontrovertibly exonerate appellant is beside the point. The supplemental report identified new defense witnesses, potentially reduced appellant's custody exposure, and provided possible defenses to several charges, thereby casting the case against him in an entirely different light. Appellant suffered prejudice by his ignorance because earlier discovery of the report would have affected his decision to enter a plea before the preliminary hearing. In contrast, if the plea is vacated, the People would suffer little or no prejudice. The case was at an early stage, and the People have made no showing that witnesses have become unavailable or their memories have faded.

## DISPOSITION

The judgment is reversed, and the matter is remanded with directions to allow appellant the opportunity to withdraw his no contest plea.

Boland, J., and Flier, J., concurred.