Filed 3/12/15  P. v. Nahinu CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

| | |
|---|---|
| THE PEOPLE, | C076424 |
| Plaintiff and Respondent, | (Super. Ct. Nos. 12F4102, 12F8833, 13F3999, & 13F4259) |
| v. | |
| STEVEN KALAKAUA NAHINU, | |
| Defendant and Appellant. | |

Defendant Steven Kalakaua Nahinu appeals from the trial court's order denying his motion to withdraw his no contest pleas pursuant to Penal Code section 1018.[1] Defendant entered no contest pleas in four separate cases.  On appeal, defendant contends the trial court abused its discretion in denying his motion to withdraw his pleas based on newly discovered evidence concerning the identity of a possible witness in one of the four cases.  Defendant also contends the prosecution failed to disclose a sheriff's report prepared in connection with an unrelated case against the witness, thereby violating his

---

[1] Undesignated statutory references are to the Penal Code.

1

due process rights under *Brady v. Maryland* (1963) 373 U.S. 83 [10 L.Ed.2d 215] (*Brady*). We shall affirm.

## BACKGROUND

Four criminal cases were commenced against defendant during the period from June 2012 to July 2013.

On June 26, 2012, a complaint was filed in Shasta County Superior Court case No. 12F4102, charging defendant with second degree commercial burglary (§ 459) and receiving stolen property (§ 496, subd. (a)). The complaint further alleged that defendant had suffered a prior strike conviction (§ 1170.12) and had served a prior prison term (§ 667.5, subd. (b)).

On December 21, 2012, a complaint was filed in Shasta County Superior Court case No. 12F8833, charging defendant with possession of marijuana for sale (Health & Saf. Code, § 11359) and possession of ammunition by a felon (§ 30305, subd. (a)(1)). The complaint further alleged that defendant had suffered a prior strike conviction (§ 1170.12) and had served two prior prison terms (§ 667.5, subd. (b)).

On June 28, 2013, a complaint was filed in Shasta County Superior Court case No. 13F3999, charging defendant with receiving stolen property (§ 496, subd. (a)), identity theft (§ 530.5, subd. (a)), and theft by invalid access card (§ 484g, subd. (a)). The complaint further alleged that defendant had suffered a prior strike conviction (§ 1170.12) and had served a prior prison term (§ 667.5, subd. (b)).

On July 5, 2013, a complaint was filed in Shasta County Superior Court case No. 13F4259, charging defendant with second degree robbery (§ 211) and carjacking (§ 215, subd. (a)). The complaint further alleged that defendant had suffered a prior strike conviction (§ 1170.12), had suffered a prior serious felony conviction (§ 667, subd. (a)(1)), and had served a prior prison term (§ 667.5, subd. (b)). The complaint alleged that defendant committed the offenses while on bail in case Nos. 12F4102, 12F8833, and 13F3999. The complaint alleged that defendant was armed with a firearm in the

2

commission of the offenses (§ 12022, subd. (a)(1)) and personally used a firearm in the commission of the offenses (§ 12022.53, subd. (b)).

*The First Plea Agreement*

On August 19, 2013, defendant entered into a plea agreement resolving all four cases.  In case No. 13F4259, defendant pleaded guilty to robbery and admitted a prior strike conviction.  In case No. 13F3999, defendant pleaded guilty to receiving stolen property.  In case No. 12F8833, defendant pleaded guilty to possession of marijuana for sale.  In case No. 12F4102, defendant pleaded guilty to receiving stolen property.  As part of the plea agreement, the parties stipulated that defendant would receive a 12-year prison sentence and the remaining charges against him would be dismissed.

*Defendant's First Motion to Withdraw His Plea*

On December 6, 2013, defendant filed a motion to withdraw his plea based, in part, on the trial court's failure to sentence him immediately, which had been a condition of the parties' plea agreement.  The trial court granted the motion and reinstated all charges.

*The Second Plea Agreement*

On January 9, 2014, defendant entered into a second plea agreement resolving all four cases with the understanding that he would be sentenced to 10 years in state prison.  In case No. 12F4102, defendant pleaded no contest to receiving stolen property and admitted a prior strike conviction.  In case No. 12F8833, defendant pleaded no contest to possession of marijuana for sale and admitted the prior strike conviction.  In case No. 13F3999, defendant pleaded no contest to receiving stolen property and admitted the prior strike conviction.  In case No. 13F4259, defendant pleaded no contest to an amended charge of driving a stolen vehicle (Veh. Code, § 10851) and admitted the prior strike conviction.  The remaining charges were then dismissed.

*Defendant's Second Motion to Withdraw His Plea*

On March 27, 2014, defendant filed a motion to withdraw his plea based on new evidence in case No. 12F8833. The motion includes a brief summary of the sheriff's report in case No. 12F8833. The sheriff's report is not part of the record.

According to defendant's summary, sheriff's deputies responded to a report of "indiscriminate shooting" on Intermountain Road in the early morning hours of November 29, 2012. They contacted Joshua and Jedessa Sanders in a travel trailer on the property. The Sanders claimed to have no knowledge of any gunfire, but directed deputies to a nearby recreational vehicle (RV) occupied by a person known to them as "Mike" or "Gunslinger."

Deputies entered the RV and found defendant and another person, codefendant Robert McRorie, on the beds. They also found a duffel bag containing plastic bags full of marijuana, a large jar full of marijuana, scales, and packaging material for marijuana. Deputies also noticed a handwritten sign reading "Gunslinger" over one of the beds.

Defendant and McRorie denied knowledge or possession of the marijuana.

Defendant's motion was accompanied by a declaration stating that at the time defendant entered his plea, he believed he was likely to be convicted at trial based on the information then known to him. The declaration goes on to say: "Shortly after I entered that plea, I learned the identity of an alternate suspect in [case No. 12F8833], Michael Wagy who goes by the nickname 'Gunslinger;' [¶] . . . I also learned through Shasta County Sheriff Office Report number 13-626 that Michael Wagy was arrested on January 7, 2013, at the same address where I was arrested and was charged with crimes related to the possession of items that were located inside of his residence there." The declaration does not specify which "items" Wagy was alleged to have possessed.

Defendant's declaration concludes by saying that defendant could not have discovered the foregoing information prior to entering his plea, and would not have

4

entered the plea had he known Wagy's true name and the circumstances surrounding his arrest.

On April 16, 2014, defendant filed an addendum to the still-pending motion by his counsel, attorney Robert L. Hammonds, Jr. In his declaration, Hammonds avers: "During my investigation of [case No.] 12F8833 I came to believe that the true identity of an alternate suspect known as "Gunslinger" was Mike Wiggy. [¶] I and my investigator Jason Moore attempted to locate any records, files or persons with knowledge of Mike Wiggy; [¶] . . . We were unsuccessful in locating any information on this alternate suspect; [¶] . . . At this point in our investigation [defendant] entered his no contest plea that is the subject of this motion."

Attorney Hammonds's declaration goes on to say: "Shortly after the plea was entered, I was informed by Rhonda Hixon, attorney for the co-defendant McRorie in [case No.] 12F8833, that the true identity of Gunslinger was Michael Dean Wagy; [¶] . . . Attorney Hixon provided me with a copy of Shasta County Sheriff's Office report number 13-626 that indicates that Michael Dean Wagy was arrested on January 7, 2013, at the exact same location and address that [defendant] was arrested in [case No.] 12F833; [¶] . . . As a result of Wagy's arrest on January 7, 2013, the Shasta County District Attorney's Office filed and prosecuted case number 13F1006."

Attorney Hammonds's declaration concludes: "I believe that this information is exculpatory information that was in under [*sic*] the custody and control of the Shasta County District Attorney's Office and should have been provided to the defense even without request; [¶] . . . I do not believe that Deputy District Attorney Hanna who has prosecuted this matter against [defendant] had any personal knowledge of Mr. Wagy's matter and have reviewed the court records and have found no instance where Mr. Hanna appeared on that matter."

The trial court heard argument on the motion on April 18, 2014. At the beginning of the hearing, the trial court observed that defendant may not have known Wagy's

proper name, but he knew that Wagy existed, albeit under a different name. Thus, the trial court observed, defendant was likely to have considered the possibility that "Gunslinger" or "Mike Wiggy" could be identified and located before trial in deciding whether or not to accept the plea.

The trial court then asked Attorney Hammonds how he could be sure that Wagy's testimony would be helpful to the defense. Hammonds responded: "I think there is some likelihood that [Wagy] may come in and say it [(the marijuana and/or ammunition)] was his. But I don't know . . . that for sure. And I'm not making that representation. But it does provide a concrete person that the defendant can point to, and say, this was his house. . . . [¶] There [were] indications within that residence, like a travel trailer, that it belonged to or a person named [Gunslinger] lived there. And the fact that that same person was arrested at that location, and charged with possessing everything that was in there, creates doubt in the mind of a fact finder."

In response, the prosecutor emphasized that defendant had been aware of the existence of a third party named "Gunslinger" or "Mike Wiggy" from the time the case was first filed. According to the prosecutor, "the defendant and the codefendant were found hiding on two beds within an RV trailer. There is never any accusation within that case that it's their trailer, that they lived there. The statements from the defendant relate to this other person, Mike gun slinger. They at that time don't know his last name, apparently, who had just left the residence. [¶] So the evidence at the time that this case was first filed, was that there was some third party there and present. The defendant was aware of that information."

The prosecutor also argued that Wagy's connection to the RV was irrelevant to the People's case against defendant. According to the prosecutor, "this location appears to be a place where a lot of RV's and trailers and a lot of--sounds like down on their luck folks who are there. It's not an address with a house, where someone owns the house and it's readily identifiable who the person is. [¶] And according to the subsequent case

6

which relates to this now identified person, that is not even [Wagy's] address. It is not his probation address at the time that it's determined. The witnesses in that case, and I think he makes a statement that he is at that location, three to four days a week."

Furthermore, the prosecutor argued, "it's a little bit surprising that the person was unknown to the defendant, in that the defendant was located in supposedly his RV. He was located with a--there was marijuana throughout the RV, but there was also a duffle bag with repackaged marijuana in it, which would seem to signify that he and the other defendant had brought the marijuana to that location and that it was ready for travel. [¶] But there has never been an accusation that he lived there, or that it was his house. And so the facts that were known to the defendant the second time he entered the plea, because this would be the second motion to withdraw a plea--the last one was granted-- were known to the defendant a year ago. And just because this person has been identified more specifically, and is now in state prison, and so maybe he would testify since he really doesn't have anything to lose, it doesn't change the circumstances here in this case, that this information was known to the defendant, very well could have been known to the defendant."

The prosecutor also denied the alleged *Brady* violation, stating: "I think an assertion that we somehow were supposed to track this completely unrelated report, not handled by any of the same parties, not involved the same police officers, and somehow connect the two based on a street address where numerous trailers are, is obviously not reasonable."

The trial court denied the motion, stating: "Another problem with this kind of scenario, because it leaves open the possibility that two people who may be responsible for the same offense, if one of them isn't arrested at the time. And generally, people aren't too eager to identify co-participants especially if they haven't been arrested. Later gets arrested and convicted, that would automatically provide a basis to withdraw the plea when the person said, gee, by the way, now I know who that person was. [¶] So it's a

7

little bit--at least from the participants themselves--I have no problem with counsel's declaration. But I don't afford [defendant's] declaration a total credibility. So I don't see it as a basis. I don't see an establishment by a clear and convincing evidence for the basis to withdraw the plea. So the motion is denied."

The trial court then sentenced defendant to the stipulated term of 10 years in state prison based on a six-year term (a three-year upper term doubled for the strike) in case No. 12F4102 and consecutive 16-month terms (one-third the middle term doubled for the strike) in the remaining cases.

Defendant filed a timely notice of appeal. The trial court granted defendant's request for a certificate of probable cause.

## DISCUSSION

### I

### *The Trial Court Did Not Abuse Its Discretion in Denying Defendant's Motion to Withdraw His Plea Under Section 1018*

Defendant contends the trial court abused its discretion by denying his motion to withdraw his plea. We disagree.

Section 1018 permits a defendant to move to withdraw his plea for good cause at any time before judgment is entered.[2] A no contest plea is treated the same as a guilty plea for purposes of section 1018. (*People v. Rivera* (1987) 196 Cal.App.3d 924, 926-927.) To establish good cause, a defendant must show by clear and convincing evidence that his plea was the result of mistake, ignorance, or any other factor overcoming the exercise of free judgment. (*People v. Cruz* (1974) 12 Cal.3d 562, 566.) However, a

---

[2] Section 1018 provides in pertinent part, "On application of the defendant at any time before judgment . . . the court may, . . . for a good cause shown, permit the plea of guilty to be withdrawn and a plea of not guilty substituted. . . . This section shall be liberally construed to effect these objects and to promote justice."

8

defendant must establish that his free will was overcome, not merely that he had a change of heart. (*People v. Nance* (1991) 1 Cal.App.4th 1453, 1456.)

A trial court's decision to grant or deny a defendant's motion to withdraw his plea is reviewed for abuse of discretion. (*People v. Mickens* (1995) 38 Cal.App.4th 1557, 1561 (*Mickens*).) Discretion is abused when a court acts in an arbitrary, capricious, or patently absurd manner, which results in manifest miscarriage of justice. (*People v. Jordan* (1986) 42 Cal.3d 308, 316.) In determining whether a defendant has shown good cause for granting a motion to withdraw his plea, the reviewing court must adopt the trial court's factual findings if they are supported by substantial evidence. (*People v. Fairbank* (1997) 16 Cal.4th 1223, 1254.)

Relying on *People v. Ramirez* (2006) 141 Cal.App.4th 1501 (*Ramirez*), defendant argues that the prosecution "suppressed" favorable information, thereby overcoming his ability to exercise free judgment in deciding to plead no contest. (See *Ramirez*, *supra*, 141 Cal.App.4th at p. 1506 ["The state's suppression of favorable evidence is an extrinsic cause which may overcome the exercise of free judgment."].) Defendant's reliance on *Ramirez* is misplaced.

In *Ramirez*, defense counsel discovered a previously undisclosed supplemental police report after the defendant pleaded no contest to armed robbery and evading arrest in exchange for the dismissal of carjacking and unlawful driving charges. (*Ramirez*, *supra*, 141 Cal.App.4th at pp. 1503-1504.) The supplemental police report contained witness statements indicating that the defendant was not present during the carjacking, and had been an unwilling passenger during the later police chase. (*Id.* at pp. 1504-1505.) The prosecution had ample opportunity to produce the supplemental report to the defendant prior to the admission of his plea, but failed to do so. (*Id.* at p. 1506.)

The trial court denied the defendant's motion to withdraw his plea and the court of appeal reversed, stating: "Here, appellant has established by clear and convincing evidence that the prosecution's withholding of favorable evidence affected his judgment

9

in entering his plea, rendering the waiver of rights involuntary. The fact that the new information did not uncontrovertibly exonerate appellant is beside the point. The supplemental report identified new defense witnesses, potentially reduced appellant's custody exposure, and provided possible defenses to several charges, thereby casting the case against him in an entirely different light. Appellant suffered prejudice by his ignorance because earlier discovery of the report would have affected his decision to enter a plea before the preliminary hearing." (*Ramirez, supra*, 141 Cal.App.4th at pp. 1507-1508.) The facts in this case are different.

Preliminarily, we observe that *Ramirez* involved a supplemental police report prepared in connection with the same case as the one that resulted in charges against the defendant. (*Ramirez, supra*, 141 Cal.App.4th at p. 1506.) Here, by contrast, the sheriff's report describing Wagy's arrest was prepared in connection with an entirely different case. There is nothing in the record to suggest that the Wagy report was "supplemental" to any report prepared in defendant's case. Furthermore, as we shall discuss, there is nothing in the record to suggest that the Wagy report was "suppressed."[3] Consequently, we reject defendant's attempt to analogize to *Ramirez* by characterizing the Wagy report as a supplemental report that was suppressed.

Having concluded that defendant's ability to exercise free judgment was not overcome by the suppression of favorable information, we next consider whether the record suggests any other basis for defendant's motion to withdraw his plea. For purposes of analysis, we assume that the information contained in the Wagy report constitutes newly discovered evidence. (But see *In re Hall* (1981) 30 Cal.3d 408, 420 [information that was known or could have been discovered by diligent investigation

---

[3] We consider defendant's *Brady* claim momentarily. For present purposes, suffice to say that the record does not support defendant's characterization of the Wagy report as having been "suppressed."

10

before trial does not qualify as newly discovered evidence].)  We also assume without deciding that newly discovered evidence constitutes good cause within the meaning of section 1018.  (*Ramirez, supra*, 141 Cal.App.4th at p. 1507 [" ' "the withdrawal of a plea of guilty should not be denied in any case where it is in the least evident that the ends of justice would be subserved by permitting the defendant to plead not guilty instead; and it has been held that the least surprise or influence causing a defendant to plead guilty when he has any defense at all should be sufficient cause to permit a change of plea from guilty to not guilty" ' "].)

Even assuming that section 1018 applies, we conclude that *Ramirez* is inapposite.  In *Ramirez*, the defendant had no knowledge of any exculpatory witnesses until after he entered his guilty plea.  (*Ramirez, supra*, 141 Cal.App.4th at p. 1506.)  In this case, by contrast, defendant knew of Wagy's existence prior to entering his plea.  Although defendant may not have known Wagy's true name, he knew Wagy's first name ("Mike"), a close approximation of his last name ("Wiggy"), his nickname ("Gunslinger"), and frequent location (the property on Intermountain Road).  Thus, unlike the defendant in *Ramirez*, defendant was not only aware of the existence of the witness at the time of his plea, he was also in possession of information that could have helped him to identify and locate the witness before trial.

The differences between defendant's case and *Ramirez* do not end there.  In *Ramirez*, the defendant demonstrated by clear and convincing evidence that his decision to plead no contest was based on his mistaken belief that no favorable evidence on his behalf existed, there were no available defenses, and he would lose his case and receive a 20-year prison term.  (*Ramirez, supra*, 141 Cal.App.4th at p. 1507.)  Thus, the defendant was able to show that his ignorance of the supplemental report "materially affected his decision to accept the plea agreement."  (*Ibid*.)  In this case, by contrast, defendant failed to demonstrate by clear and convincing evidence that he would not have accepted the plea agreement had he known about the Wagy report.

11

Although defendant claimed he "would not have entered the plea of no contest" had he known about the Wagy report, the trial court found defendant lacked credibility. We defer to the trial court's credibility determinations if reasonably justified by the record. (See *People v. Quesada* (1991) 230 Cal.App.3d 525, 533, superseded by statute on another point as stated in *People v. Totari* (2003) 111 Cal.App.4th 1202, 1206-1207, fn. 5.) Here, the record amply supports the trial court's determination that defendant lacked credibility. As noted, defendant was not only aware of Wagy's existence at the time he entered his plea, he also possessed sufficient information to conduct a meaningful search, including Wagy's first name, nickname, and connection to the RV. Consequently, as the trial court observed, much of the information in the Wagy report "was known and went into the calculations as to whether or not a plea should be entered." Furthermore, as the People observe, the information contained in the Wagy report would have only been relevant to one of the four cases pending against defendant, giving rise to an inference that defendant based his plea, in part, on the calculation that Wagy could only serve a limited exculpatory purpose, assuming he could be identified and found. Under the circumstances, the trial court's determination that defendant was not entitled to "total credibility" was reasonably justified by the record.[4]

Attorney Hammonds's declaration reveals yet another difference between this case and *Ramirez*. In *Ramirez*, the defendant's trial counsel specifically stated that the supplemental police report would have affected his evaluation of the case and altered his advice to the defendant in accepting the plea agreement. (*Ramirez*, *supra*,

---

[4] Defendant contends the trial court "simply felt that it was bad policy under the circumstances to grant [the motion to withdraw defendant's plea], and therefore applied a presumption that [defendant's] declaration was disingenuous." There is nothing in the record to suggest that the trial court based its decision solely on policy considerations or failed to give adequate consideration to defendant's declaration.

141 Cal.App.4th at p. 1507.)  In this case, by contrast, defense counsel made no such representation.

Finally, we observe that the circumstances surrounding Wagy's arrest, to the extent they can be gleaned from the record, do not appear to provide the sort of powerful exculpatory evidence found in the supplemental police report in *Ramirez*.  The record indicates that Wagy was arrested approximately five weeks after defendant.  Defendant makes much of the fact that Wagy was arrested in the same RV; however, the record does not establish that Wagy owned the RV or even lived there full-time.  If anything, the prosecutor's remarks during the argument on defendant's motion to withdraw his plea suggest that the RV might have been used by a number of people.  Similarly, defendant emphasizes the fact that Wagy was charged with possession of "items" found in the RV.  However, the record does not disclose which "items" Wagy is alleged to have possessed.  Moreover, and more importantly, Attorney Hammonds could not represent that Wagy would testify the marijuana was his.  Thus, unlike the supplemental report in *Ramirez*, the newly discovered evidence in this case does not cast defendant "in an entirely different light."  (*Ramirez*, 141 Cal.App.4th at p. 1508.)

Defendant has not met his evidentiary burden to show that his ignorance of Wagy's true name was sufficient to overcome the exercise of his free judgment, or that the ends of justice would be subserved by permitting a change of plea.  (*People v. Weaver* (2004) 118 Cal.App.4th 131, 145-146.)  Defendant merely asserts the discovery of information that could conceivably improve his chances at trial, which is insufficient.  (*People v. Caruso* (1959) 174 Cal.App.2d 624, 642.)  Accordingly, we conclude that the trial court did not act arbitrarily or capriciously in denying defendant's motion to withdraw his plea, and defendant has shown no abuse of discretion.

## II
### *The Trial Court Did Not Err in Denying Defendant's Motion to Withdraw His Plea Based on the Alleged Brady Violation*

Next, defendant contends the prosecution failed to disclose exculpatory evidence under *Brady*, thereby violating his right to due process. Although defendant's argument on appeal is not entirely clear, he apparently contends the alleged *Brady* violation constituted an independent basis for granting his motion to withdraw his plea. As we explain, the trial court was within its discretion to deny defendant's motion because defendant failed to establish a *Brady* violation. (See *Mickens, supra*, 38 Cal.App.4th at p. 1561 [abuse of discretion review for trial court's ruling on motion to withdraw plea]; *People v. Salazar* (2005) 35 Cal.4th 1031, 1042 (*Salazar*) [de novo standard of review for the issue of whether the defendant has established the elements of a *Brady* claim].)

" '[T]he term "*Brady* violation" is sometimes used to refer to any breach of the broad obligation to disclose exculpatory evidence--that is, to any suppression of so-called "*Brady* material"--although, strictly speaking, there is never a real "*Brady* violation" unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict. There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued.' [Citation.] Prejudice, in this context, focuses on 'the materiality of the evidence to the issue of guilt or innocence.' [Citations.] Materiality, in turn, requires more than a showing that the suppressed evidence would have been admissible [citation], that the absence of the suppressed evidence made conviction 'more likely' [citation], or that using the suppressed evidence to discredit a witness's testimony 'might have changed the outcome of the trial' [citation]. A defendant instead 'must show a

"reasonable probability of a different result." ' " (*Salazar, supra*, 35 Cal.4th at pp. 1042-1043.)

Federal courts are divided on the question whether prosecutors are required to disclose material exculpatory evidence before entering into plea agreements. (Compare *Matthew v. Johnson* (5th Cir. 2000) 201 F.3d 353, 361-362 [*Brady* inapplicable to guilty pleas] with *McCann v. Mangialardi* (7th Cir. 2003) 337 F.3d 782, 787 [opining in dicta that allowing defendant to enter guilty plea without disclosing exculpatory evidence would violate due process].) Our Supreme Court has declined to "decide the broad question whether or to what extent the prosecution has a duty to disclose evidence favorable to a criminal defendant before the defendant pleads guilty." (*In re Miranda* (2008) 43 Cal.4th 541, 582, fn. omitted.) Defendant urges us to adopt the reasoning of the federal courts that have concluded that *Brady* requires prosecutors to disclose exculpatory evidence at the plea stage. We conclude that it is unnecessary for us to reach the issue, as defendant has failed to establish the elements of a *Brady* violation in any case.

To show material is subject to *Brady*, it " 'must be favorable to the accused, either because it is exculpatory, or because it is impeaching.' " (*Salazar, supra*, 35 Cal.4th at p. 1043; *People v. Ashraf* (2007) 151 Cal.App.4th 1205, 1214.) "Evidence is 'favorable' if it either helps the defendant or hurts the prosecution, as by impeaching one of its witnesses." (*In re Sassounian* (1995) 9 Cal.4th 535, 544 (*Sassounian*).) Defendant appears to assume that the information contained in the Wagy report was "favorable." However, "to determine whether evidence that was not disclosed to the defense was favorable and material under *Brady*, we must have some idea of what that evidence was." (*Ashraf,* at p. 1212.) Here, the Wagy report does not appear in the record and we have

15

been provided only a bare outline of its contents.[5] We have found nothing in the record to suggest that the information contained in the Wagy report would have tended to show that defendant did not possess marijuana for sale in November 2012. Furthermore, we cannot presume that the Wagy report was exculpatory in content. (*Id.* at pp. 1212-1214.) Accordingly, we conclude that defendant has failed to establish that the information contained in the Wagy report was "favorable."

Defendant has also failed to show that the Wagy report was "suppressed." Under *Brady*, the prosecutor has the duty to learn of any favorable evidence known to others acting on the government's behalf in the case. (*Salazar, supra*, 35 Cal.4th at p. 1042.) The prosecution's duty to search for exculpatory evidence is generally limited to materials possessed by the "prosecution team" that is connected to the investigation or prosecution of the charges against the defendant. (*Barnett v. Superior Court* (2010) 50 Cal.4th 890, 904.) "However, in limited circumstances the prosecution's *Brady* duty may require disclosure of exculpatory and impeachment information contained in materials that are *not* directly connected to the case. For example, particularly upon the request of the defense, the prosecution has the duty to seek out critical impeachment evidence in records that are ' "reasonably accessible" ' to the prosecution but not to the defense. (*People v. Little* (1997) 59 Cal.App.4th 426, 433-434 [prosecution must investigate key prosecution witness's criminal history and disclose felony convictions]; *People v. Santos* (1994) 30 Cal.App.4th 169, 178-179 [upon defense request, prosecution must disclose prosecution witnesses' misdemeanor convictions]; *People v. Hayes* (1992)

---

[5] As noted, defendant's declaration describes the contents of the Wagy report as follows: ". . . Michael Wagy was arrested on January 7, 2013, at the same address where [defendant] was arrested and was charged with crimes related to the possession of items that were located inside of his residence there." According to Attorney Hammonds's declaration, the Wagy report "indicates that Michael Dean Wagy was arrested on January 7, 2013, at the exact same location and address that [defendant] was arrested in [case No.] 12F8833."

16

3 Cal.App.4th 1238, 1243, 1245 [upon defense request, prosecution must disclose prosecution witnesses' criminal convictions, pending charges, probation status, acts of dishonesty, and prior false reports]; *People v. Martinez* (2002) 103 Cal.App.4th 1071, 1078; *In re Pratt* (1999) 69 Cal.App.4th 1294, 1317.)" (*J.E. v. Superior Court* (2014) 223 Cal.App.4th 1329, 1335-1336, fn. omitted.)

"When deciding the scope of the prosecution's duty to search files unrelated to the case, the courts consider such factors as whether a request has been made by the defense; the prosecution's ease of access to the information; and the likelihood of evidence favorable to the defense. ([*United States v.*] *Brooks* [(D.C. Cir. 1992) 966 F.2d 1500,] 1504 [prosecution should inspect files when 'there is an explicit request for an apparently very easy examination, and a non-trivial prospect that the examination might yield material exculpatory information . . .']; [*United States v.*] *Joseph* [(3d Cir. 1999) 996 F.2d 36,] 41 [absent request by defense, prosecution need not search 'unrelated files to exclude the possibility, however remote, that they contain exculpatory information'].)" (*J.E. v. Superior Court, supra*, 223 Cal.App.4th at p. 1336, fn. 6.) "[W]here a prosecutor has no actual knowledge or cause to know of the existence of *Brady* material in a file unrelated to the case under prosecution, a defendant, in order to trigger an examination of such unrelated files, must make a specific request for that information--specific in the sense that it explicitly identifies the desired material and is objectively limited in scope." (*United States v. Joseph, supra*, 996 F.3d at p. 41, fn. omitted.)

As we have discussed, the Wagy report was prepared in connection with an entirely different case. There is nothing in the record to suggest that defendant made any specific request for information that might have encompassed the Wagy report. Furthermore, there is nothing to suggest that anyone on the prosecution team knew or should have known that the Wagy report contained information that might be relevant to defendant's case. To the contrary, Attorney Hammonds's declaration states: "I do not believe that [the prosecutor] . . . had any personal knowledge of Mr. Wagy's matter and

17

have reviewed the court records and found no instance where [the prosecutor] appeared on that matter." On this record, we conclude that defendant has failed to establish that the prosecution breached a duty to disclose the Wagy report.

Assuming arguendo that the prosecution breached a duty to disclose the Wagy report, defendant fails to establish prejudice. Whether the suppression of evidence is prejudicial turns on the materiality of the information that has been withheld. (*Salazar, supra*, 35 Cal.4th at p. 1043; see also *Runningeagle v. Ryan* (9th Cir. 2012) 686 F.3d 758, 769 [" 'The terms "material" and "prejudicial" are used interchangeably in *Brady* cases' "].) The defendant has the burden of showing materiality. (*Sassounian, supra*, 9 Cal.4th at p. 545.)

Evidence is material under *Brady* "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." (*United States v. Bagley* (1985) 473 U.S. 667, 682 [87 L.Ed.2d 481, 494]; see *Sassounian, supra*, 9 Cal.4th at p. 544.) " '[T]he issue in a case involving a guilty plea is whether there is a reasonable probability that but for the failure to disclose the *Brady* material, the defendant would have refused to plead and would have gone to trial.' [Citations.]" (*United States v. Nelson* (D.D.C. 2013) 979 F.Supp.2d 123, 134.)

Defendant contends the information in the Wagy report was material because ". . . Wagy's testimony could have provided a defense." However, there is nothing in the record to suggest that Wagy's testimony would have been helpful to the defense. To the contrary, Attorney Hammonds could not say what Wagy's testimony would have been. Mere speculation about what Wagy's testimony might have been does not establish materiality under *Brady*. (*People v. Superior Court* (*Meraz*) (2008) 163 Cal.App.4th 28, 52.)

18

Defendant also contends the Wagy report was material because the circumstances surrounding Wagy's arrest "could have created a reasonable doubt in the minds of jurors that the marijuana and ammunition belonged to [defendant]." However, " '[t]he mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense.' " (*People v. Lucas* (2014) 60 Cal.4th 153, 234.) In the absence of any information concerning the contents of the report or substance of Wagy's likely testimony, we have no way of knowing whether there was a reasonable probability that defendant would have refused to plead and gone to trial. Thus, defendant has failed to establish materiality under *Brady*.

For all of the foregoing reasons, we conclude that defendant has failed to establish the elements of a *Brady* violation. We further conclude that the trial court did not abuse its discretion by denying defendant's motion to withdraw his plea based on the alleged *Brady* violation.

**DISPOSITION**

The judgment is affirmed.


        BLEASE        , Acting P. J.


We concur:


        HULL        , J.


        BUTZ        , J.