Filed 10/9/13  P. v. Reyes CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | F065761 |
| Plaintiff and Respondent, | (Super. Ct. No. BF140907A) |
| v. | |
| EDUARDO CHAVEZ REYES, | **OPINION** |
| Defendant and Appellant. | |

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Kern County.  Charles R. Brehmer, Judge.

Matthew A. Siroka, under appointment by the Court of Appeal, Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Catherine Chatman and Raymond L. Brosterhous, II, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]        Before Levy, Acting P.J., Gomes, J. and Kane, J.

Appellant, Eduardo Chavez Reyes, pled no contest to assault with a deadly weapon (Pen. Code, § 245, subd. (a))[1] and was sentenced to a three-year prison term. On appeal, Reyes contends the court abused its discretion when it denied his motion to withdraw his plea. We affirm.

## FACTS

On the evening of March 3, 2012, Bakersfield police officers responded to Maria Andreas's residence on a report of an assault with a deadly weapon. Andreas told the officers that she and Reyes had two children together and earlier that day Reyes took one with him. Earlier that evening, she and her boyfriend Julio Montufar were in her living room when they heard someone tampering with a window screen in the front of the residence. Reyes then climbed in through the window, challenged Montufar to fight, and demanded that Andreas let him take the children. Andreas refused and Reyes got a knife from the kitchen and again challenged Montufar to fight. When Reyes walked toward Montufar pointing the knife at him, Montufar grabbed the knife and took it away. Reyes then got his other child from the residence and fled with both children.

Montufar told the officers that after climbing in through the window, Reyes grabbed a knife and challenged him to fight. When Montufar grabbed the knife, Reyes ran the blade across Montufar's hand, cutting several of Montufar's fingers. Reyes was detained and arrested that night.

On March 6, 2012, the district attorney filed a complaint charging Reyes with first degree burglary (count 1/§ 460, subd. (a)); assault with a deadly weapon (count 2) with a personal use of a weapon enhancement (§ 12022, subd. (b)); kidnapping (count 3/§ 207, subd. (a)); and driving without a valid driver's license (count 4/Veh. Code, § 12500, subd. (a)).

---

**1**     All further statutory references are to the Penal Code unless otherwise indicated.

2

On March 19, 2012, at the pre-preliminary hearing, while represented by public defender Jacob Evans, Reyes entered into a plea bargain. Pursuant to the plea agreement, Reyes pled no contest to the assault charge in exchange for dismissal of the remaining counts and allegations and a stipulated three-year prison term. Prior to entering his plea, Reyes initialed and signed a change of plea form that contained: a section that memorialized the terms of his plea agreement, a section that explained the consequences of his plea, a section that explained Reyes's constitutional rights, and a section that contained a waiver of these rights.

On April 17, 2012, retained counsel Arturo Revelo substituted in for Evans.

On July 24, 2012, Revelo filed a motion to withdraw plea on Reyes's behalf, alleging, in pertinent part, that Evans's failure to investigate and discover Montufar's criminal background resulted in a waiver of rights by Reyes that was not knowing and intelligent.

On August 2, 2012, at a hearing on the motion, Evans was called by the defense and testified that he attempted to investigate Montufar but did not recall what his investigation yielded. Evans met with Reyes multiple times on the day of the pre-preliminary hearing. However, he did not have an investigator from his office investigate the facts of Reyes's case prior to the pre-preliminary hearing. When he was going over the waiver form and plea offer with Reyes, Reyes was indecisive about whether to accept the offer. In accord with his standard practice, Evans would have told Reyes the case could be continued so Reyes could take some time to think about it, he could fight the case, or he could enter a plea. That advice would have changed if the plea offer had been a "today-only" offer but there was no indication of that in Evans's notes. This meant he probably told Reyes it was "perfectly advisable" to think about the plea offer if he was not sure, especially in a case as serious as Reyes's case.

After Evans testified, the court granted Revelo's request to take judicial notice of certain court records relating to case No. BF125655A in which Montufar was charged

3

with three felony offenses, but convicted only of false imprisonment (§ 236), and case No. BF093821A in which he was convicted of misdemeanor domestic violence (§ 273.5, subd. (a)). The records also showed that Montufar was placed on probation in the false imprisonment case for three years and that his probation would end on June 9, 2012.

Reyes then testified that Evans did not talk to him about the details of his case or the police version of events and just told him to "sign." Evans did not tell Reyes anything about Montufar's criminal background and had Reyes been aware of it, he would have fought his case and not taken a plea. Reyes intended to fight the charges if he were allowed to withdraw his plea.

On cross-examination, Reyes claimed he was still living in the residence with Andreas when the alleged offenses occurred. The only thing Reyes remembered from the day he entered his plea was that Evans asked him "just to sign some papers." But at the end, when he did not want to continue signing, Evans kept saying, "sign, sign, sign." He denied that Evans told him he could have more time to think about the plea offer or that he could continue the case so that "they could investigate." Evans told Reyes that if his case went to a jury trial, Reyes would probably lose and get six years. Reyes told Evans the allegations involving the children were not true. He did not tell Evans his version of what happened with the knife because Evans did not ask him about it. Additionally, Evans did not tell Reyes that he was charged with assaulting someone with a knife; nor did Reyes know that he was pleading guilty to assault with a knife.

Evans testified in rebuttal for the prosecution that he went over the police report and the witness statements with Reyes and that he asked Reyes about his version of what happened. Evans went over all the charges with Reyes, including the assault with a deadly weapon charge. On the change of plea form, Evans underlined the key terms he went over. In accord with his practice, Evans would have gone over Reyes's constitutional rights and he would have told him he could fight his case and that the preliminary hearing, which had already been scheduled, was the first step in doing so.

4

Evans would have told these things to Reyes at the beginning of the conversation with him and again when they went over the change of plea form. Evans also would have discussed with Reyes whether he had any defenses and their strengths and weaknesses.

Evans made it clear to Reyes that it was Reyes's choice whether or not to enter a plea and nobody could force him "either way." Evans did not pressure Reyes into entering a plea and he never told him to "sign, sign, sign." Evans probably told Reyes that if he went to trial he would probably lose and get about six years. In response to questions by Evans, Reyes stated he understood everything and, although he was hesitant and unenthusiastic about it, he said he wanted to accept the plea bargain and he gave a specific reason for doing so.

After hearing argument, the court did not find good cause for Reyes to withdraw his plea and it denied his motion. In pertinent part, the court also found that attorney Evans went over the change of plea form with Reyes and explained to him the three options: 1) accept the plea offer; 2) take the matter to trial; or 3) continue the matter.

**DISCUSSION**

*I.     The Motion to Withdraw Plea*

A trial court may allow a defendant to withdraw a guilty plea upon his or her showing of good cause based on clear and convincing evidence. (§ 1018; *People v. Cruz* (1974) 12 Cal.3d 562, 566.) For present purposes, a plea of no contest is considered the same as a plea of guilty. (§ 1016, par. 3.) Good cause to withdraw a guilty plea includes "[m]istake, ignorance or any other factor overcoming the exercise of free judgment." (*People v. Cruz, supra,* at p. 566.) However, a defendant must establish that his free will was overcome, not merely that he had a change of heart. (*People v. Nance* (1991) 1 Cal.App.4th 1453, 1456.)

We review the trial court's decision to deny a motion to withdraw a guilty plea for abuse of discretion. (*People v. Holmes* (2004) 32 Cal.4th 432, 442-443.) We adopt the

5

trial court's factual findings to the extent they are supported by substantial evidence. (*People v. Fairbank* (1997) 16 Cal.4th 1223, 1254.)

Here, Reyes filled out a change of plea form that explained the consequences of Reyes's plea and his constitutional rights and which contained a waiver of those rights. Further, Evans testified that he reviewed with Reyes the plea form, the police reports, the witness statements, and Reyes's version of events. Evans also explained to Reyes that he had three options: accept the offer and enter a plea, continue the matter so he could have more time to consider the offer, or take his case to trial. Evans further testified that although Reyes was hesitant, he opted to accept the plea offer and he gave a specific reason for doing so. Thus, the record supports the trial court's finding that Reyes failed to prove by clear and convincing evidence that he had good cause to withdraw his plea.

Reyes contends that prior to entering his plea Evans failed to investigate Montufar and discover that he had a conviction for felony false imprisonment, a conviction for misdemeanor domestic violence, and that Montufar was on probation when Reyes allegedly assaulted him. He cites *People v. Ramirez* (2006) 141 Cal.App.4th 1501 (*Ramirez*) apparently to contend that because he was ignorant of important information that would have altered his decision-making and the bargaining process, he did not voluntarily or intelligently waive his constitutional rights, which resulted in his plea not being intelligent or voluntary.[2] Thus, according to Reyes, the court abused its discretion when it denied his motion to withdraw plea. We disagree.

The evidence of Montufar's criminal background and probationary status was not directly exculpatory. Rather, it was evidence that might have borne on his credibility and character. Such evidence has a far more attenuated connection to Reyes's free judgment to enter a plea and did not directly support Reyes's factual innocence. As the United

---

[2] Reyes cites *People v. Howard* (1992) 1 Cal.4th 1132, 1175 to contend, "A guilty (or no contest) plea must be a knowing, and intelligent waiver of constitutional rights." (*Sic.*)

6

States Supreme Court has explained, "it is particularly difficult to characterize impeachment information as critical information of which the defendant must always be aware prior to pleading guilty given the random way in which such information may, or may not, help a particular defendant." (*United States v. Ruiz* (2002) 536 U.S. 622, 630 (*Ruiz*).) The high court added that such information bears more on the fairness of a trial rather than the voluntariness of a plea. (*Id*. at p. 633.) Like impeachment evidence, character evidence is not "critical information" (*id*. at p. 630) that a defendant needs to determine whether to plead guilty, since its exculpatory value is remote and highly speculative. Thus, we conclude that the alleged failure of Evans to discover and advise Reyes of Montufar's criminal record and his probationary status did not affect the voluntariness of Reyes's plea.

Reyes's reliance on *Ramirez* is misplaced. In *Ramirez,* after the defendant entered his plea, defense counsel learned of a previously undisclosed supplemental police report containing information from two witnesses that a different person had committed the crime charged against the defendant. (*Ramirez, supra,* 141 Cal.App.4th at pp. 1504-1506.) The prosecution in *Ramirez* had ample opportunity to provide the supplemental report to the defendant prior to the admission of defendant's guilty plea; however, the prosecution failed to produce the report or even disclose the information contained in the report to the defendant. (*Id.* at p. 1506.) Therefore, the defendant was able to demonstrate "by clear and convincing evidence that the prosecution's withholding of favorable evidence affected his judgment in entering his plea, rendering the waiver of rights involuntary." (*Id.* at pp. 1507-1508.)

*Ramirez* is easily distinguishable because the information at issue there involved potentially strong, exculpatory evidence, whereas the information at issue here involves only impeachment and character evidence, which as noted above, bears more on the "*fairness* of a trial than to the *voluntariness* of the plea." (*Ruiz, supra*, 536 U.S. at p. 633.) Further, the plea reduced Reyes's custody exposure to three years and it resulted in

7

the dismissal of a first degree burglary charge and a kidnapping charge. Thus we conclude that the trial court did not abuse its discretion in refusing to allow defendant to withdraw his plea.

## II. *Reyes Was Not Denied His Right to Due Process or to the Effective Assistance of Counsel*

Reyes contends he was denied the effective assistance of counsel by Evans's failure to investigate Montufar's criminal history before allowing him to enter his plea.[3] Because Reyes did not raise his ineffective assistance of counsel claim in the trial court, he is precluded from raising it on appeal. (*People v. Badgett* (1995) 10 Cal.4th 330, 351.) Nevertheless, even if this issue were properly before us, we would reject it.

"The pleading--and plea bargaining--stage of a criminal proceeding is a critical stage in the criminal process at which a defendant is entitled to the effective assistance of counsel guaranteed by the federal and California Constitutions." (*In re Alvernaz* (1992) 2 Cal.4th 924, 933.) Accordingly, ineffective assistance of counsel may constitute good cause for withdrawal of a guilty plea. (*Id.* at p. 934 ["where ineffective assistance of counsel results in the defendant's decision to plead guilty, the defendant has suffered a constitutional violation giving rise to a claim for relief from the guilty plea"].) However, "in order successfully to challenge a guilty plea on the ground of ineffective assistance of counsel, a defendant must establish not only incompetent performance by counsel, but also a reasonable probability that, but for counsel's incompetence, the defendant would not have pleaded guilty and would have insisted on proceeding to trial." (*Ibid.*) "A defendant's statement to that effect is not sufficient. Rather, there must be some objective showing. [Citation.]" (*In re Vargas* (2000) 83 Cal.App.4th 1125, 1140.)

---

**3** Reyes also contends he was denied his right to due process because his sentence was based on a conviction obtained without a valid waiver of rights. Since we have already rejected Reyes's contention that his waiver of rights was not valid, we reject this contention as well.

8

Moreover, "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." (*Strickland v. Washington* (1984) 466 U.S. 668, 697.) "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." (*Ibid.*)

Although Reyes testified he would not have entered a plea had he known of Montufar's criminal record, he does not point to any objective evidence that corroborates this testimony. Accordingly, we conclude there is no merit to Reyes's claim that he was denied the effective assistance of counsel in entering his plea because Reyes has not shown that he was prejudiced by counsel's alleged deficient performance.

## DISPOSITION

The judgment is affirmed.[4]

---

[4] On January 14, 2013, Reyes filed a Motion for Judicial Notice in this court requesting judicial notice of certain records pertaining to Montufar's conviction in case Nos. BF125655A, in which Montufar was convicted of felony false imprisonment (§ 236), and BF093821A, in which he was convicted of misdemeanor domestic violence (§ 273.5, subd. (a)). These records are attached to Reyes's motion as exhibits A through D. Reyes's request to take judicial notice of these records is granted as to page 1 of exhibit B, page 1 of exhibit C, and page 1 of exhibit D. Reyes's request is denied as to the remaining records.