Filed 11/21/14  P. v. Philthilath CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | F067783 |
| Plaintiff and Respondent, | (Super. Ct. No. VCF276393) |
| v. | |
| KHAMMON TAUC PHILTHILATH, | **OPINION** |
| Defendants and Appellants. | |

## THE COURT*

APPEAL from a judgment of the Superior Court of Tulare County.  Joseph A. Kalashian, Judge.

Tonja R. Torres, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Catherine Chatman and Raymond L. Brosterhouse II, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

\*        Before Hill, P. J., Cornell, J. and Gomes, J.

Khammon Tauc Philthilath appeals from a judgment entered after the trial court denied his motion to withdraw his no contest plea to possession of methamphetamine for sale. We reject Philthilath's contention the court abused its discretion in denying his motion to withdraw his plea. We agree, however, with his contention that he is entitled to additional presentence custody credit and therefore modify the judgment and affirm the judgment as modified.

## FACTS[1]

On December 5, 2012, sheriff deputies working an undercover operation at a casino "observed an Asian male adult with multiple tattoos on his body walking very fast through a section of the casino floor before sitting down and playing at a casino slot machine." One of the undercover deputies engaged the male—later identified as Philthilath—in conversation and asked if he knew anyone from whom the deputy could "score some criss." Philthilath looked at the deputy and asked, "Crystal?" The deputy said yes, and asked if he could buy a "twenty." Philthilath said he would walk out to his car to get it and then meet the deputy in the restroom to complete the deal.

Around 10 minutes later, Philthilath returned and went into the men's restroom. Philthilath gave a small, white plastic bindle to the undercover deputy in exchange for a $20 bill. The deputy left the restroom and informed other deputies of the transaction. Deputies contacted Philthilath inside the casino and took him into custody. The substance he gave the undercover deputy tested positive for methamphetamine. When questioned, Philthilath elected not to provide a statement.

## PROCEDURAL BACKGROUND

On December 7, 2012, Philthilath was charged in a criminal complaint with possession of methamphetamine for sale (Health & Saf. Code, § 11378). The complaint

---

[1] Because there was no trial, the facts are taken from the probation officer's report.

2

further alleged that Philthilath had suffered one prior strike conviction (Pen. Code,[2] §§ 1170.12, subds. (a)-(d), 667, subds. (b)-(i)), one prior controlled substances conviction (Health & Saf. Code, § 11370.2, subd. (b)), and four prior prison terms (§ 667.5, subd. (b)).

On December 19, 2012, Philthilath entered a no contest plea and admitted the special allegations with the understanding he would receive a sentence of 32 months plus three years, unless the prior controlled substances conviction was determined to be invalid, in which case he would receive a 32-month sentence.

Philthilath subsequently retained private counsel and, on May 17, 2013, filed a motion to withdraw his no contest plea on the ground the plea was "constitutionally defective." The motion argued that the plea was not voluntary and intelligently made under the circumstances because Philthilath's public defender failed to discuss his case with him before rushing him to accept the plea. As a result, Philthilath "took the plea not fully comprehending the consequences of his plea."

Philthilath's motion further argued that, if his public defender had discussed the defense of his case with him, she would have learned he had "a viable defense of entrapment in that he was not predisposed to commit a crime until he was induced by an undercover officer." And if the public defender had in turn presented the potential entrapment defense to the prosecutor, it was "probable" the prosecutor would have offered Philthilath a more advantageous plea deal than "the 5 years indicated here."

In support of his motion to withdraw his plea, Philthilath submitted a declaration stating: "There was no discussion of my case with my Public Defender prior to entering my plea. I did talk to her about not entering a no contest plea, but my Public Defender told me to take the plea. Based on those instructions, I obeyed them and said, 'Yes' to the court during the proceedings. The no contest plea was done very quickly and I did

---

**2**      Further statutory references are to the Penal Code unless otherwise specified.

not fully understand or comprehend, that by going along with her advi[c]e I was waiving my constitutional rights and giving up my right to a trial."

The trial court heard Philthilath's motion to withdraw his plea on June 11, 2013. Erin Brooks—a public defender who represented Philthilath in proceedings occurring after the change-of-plea hearing in December 2012—testified that she had no contact with Philthilath before he entered his plea. Brooks further testified that Alana Friedman, the public defender who represented Philthilath at the time he entered his plea, was no longer with her office but had moved to Maryland.

Following Brooks' testimony, defense counsel began her argument observing, "I believe that what happened in this case, you know, within two weeks of Mr. Philthilath being charged, he's taking a plea without any, in my opinion, development of defense in his case." After describing details contained in the police reports, defense counsel argued: "So I think … he had a pretty decent entrapment defense that could have been developed more before being rushed into a plea. I do believe that a good defense lawyer would have developed that defense and discussed that with the District Attorney." Defense counsel concluded by requesting that the court either allow Philthilath to withdraw his plea or reduce his sentence.

In opposition, the prosecutor observed: "[T]he defense is arguing that there was a defense that should have been explored. But every defense attorney has a different view of the case. The fact remains at this time during this plea [Philthilath] was read all of his rights. It was clear on the transcript he knew what he was doing. In his extensive history in the criminal justice system he's taken at least 25 other pleas. He's been through it before. He knows what he was doing." The prosecutor noted Philthilath "certainly [got] something in consideration for his plea" in that he received a mitigated term when he was facing a "maximum exposure" of 10 years. The prosecutor concluded there had been no showing Philthilath was "unaware of his rights" or "laboring under any

4

misapprehension." Instead, there was only "speculation based on the record and a few self-serving statements from [Philthilath] in his declaration."

The trial court denied Philthilath's motion to withdraw his plea, explaining: "The Court has an independent recollection of discussing this case in chambers with the attorneys…. I know the issue of entrapment came up during those discussions as a possible defense.

"And I reviewed the transcript today when the plea was taken, and … Alana Friedman was the attorney representing [Philthilath]. In my experience with Miss Friedman, she was in my court for—assigned to my court for one year. She was a relatively new attorney, but I've never had an attorney that was more conscientious, engaged, and concerned about the welfare of her clients. I saw her in trial defending clients and I was so impressed that I wrote a letter of recommendation for her for her new employment wherever that may be.

"And I do not believe that she would not have discussed the case fully with [Philthilath] before she would have ever allowed him to plead as he did. So I don't find good cause. What it is, it's buyer's remorse. After [Philthilath] thought about it, just like many people, he doesn't want to go to prison. But in actuality, he got the best deal he could get if he was gonna have to go to prison. He got the mitigated term doubled because of the strike plus the additional three-year enhancement. It couldn't be any less than that." The court then sentenced Philthilath in accordance with the terms of the plea agreement.

## DISCUSSION

### I. *Motion to Withdraw Plea*

To be valid, the entry of a guilty plea must be intelligent and voluntary under the totality of the circumstances. (*People v. Howard* (1992) 1 Cal.4th 1132, 1177.) In other words, the plea must represent a voluntary and intelligent choice among the alternative

5

courses of action open to the defendant. (*Ibid.*) Specifically, waivers of constitutional rights must be made with full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon that right. Such waivers must also be voluntary in the sense that they are the product of a free and deliberate choice rather than intimidation, coercion, or deception. (*People v. Collins* (2001) 26 Cal.4th 297, 305.)

A defendant may seek to withdraw a guilty plea before judgment has been entered upon a showing of good cause. (*People v. Sandoval* (2006) 140 Cal.App.4th 111, 123 (*Sandoval*).) To establish good cause, the defendant must show by clear and convincing evidence that he or she was operating under mistake, ignorance, or any other factor overcoming the exercise of his free judgment. (*Ibid.*) "'"[T]he withdrawal of a plea of guilty should not be denied in any case where it is in the least evident that the ends of justice would be subserved by permitting the defendant to plead not guilty instead; and it has been held that the least surprise or influence causing a defendant to plead guilty when he has any defense at all should be sufficient cause to permit a change of plea from guilty to not guilty."' [Citations.]" (*People v. Ramirez* (2006) 141 Cal.App.4th 1501, 1507.) "A no contest plea is treated the same as a guilty plea for this purpose." (*Id.* at p. 1506.) The burden is on the defendant to present clear and convincing evidence that the ends of justice would be served by permitting a change of plea to not guilty. (*People v. Shaw* (1998) 64 Cal.App.4th 492, 496 (*Shaw*).)

Finality should be encouraged, and guilty pleas entered under a plea bargain should not be set aside lightly. (*People v. Weaver* (2004) 118 Cal.App.4th 131, 145-146.) The grant or denial of a motion to withdraw a plea is purely within the discretion of the trial court. (*Sandoval, supra,* 140 Cal.App.4th at p. 123.) On appeal, the trial court's decision will be upheld unless there is a clear showing of abuse of discretion, i.e., the court exercised its discretion in an arbitrary, capricious or patently absurd manner resulting in a manifest miscarriage of justice. (*Shaw, supra,* 64 Cal.App.4th at p. 496.)

6

Philthilath contends the trial court abused its discretion in denying his motion to withdraw his plea because the court's "factual finding that [the public defender] had discussed the entrapment defense with [Philthilath] personally and thus had offered him sufficient information from which to enter a knowing, intelligent and voluntary plea" was unsupported by substantial evidence. "Rather," Philthilath argues, "substantial evidence indicated [his] plea was entered in ignorance of the defense, and that had [the public defender] actually discussed entrapment with [him], he would not have entered the no contest plea at that time."

Philthilath's contention fails because it hinges on an inaccurate representation or understanding of the basis for his motion below. Philthilath's motion to withdraw his plea was based not on his ignorance of a potential entrapment defense at the time he entered the plea but on his alleged lack of understanding that he was waiving his constitutional rights and right to a trial. Philthilath presented no argument or evidence to the trial court that he would not have entered the plea if he had been informed of the existence of a potential entrapment defense.

Philthilath instead posited a theory that his public defender's ignorance of the potential entrapment defense—due to her alleged failure to discuss his case with him—probably resulted in him receiving a less advantageous plea offer than he would have otherwise received. The trial court reasonably appeared to reject this theory based on its own independent recollection that the prosecutor and public defender specifically discussed the issue of entrapment during discussions in chambers. The fact the issue of entrapment arose in these discussions suggests not only that the public defender was aware of the potential entrapment defense but also that it was a factor in the plea negotiations.

Moreover, contrary to Philthilath's assertions, the trial court did not make a specific factual finding that the public defender personally discussed the entrapment

7

defense with him.  Instead, the court essentially made a determination that Philthilath's claim that his public defender failed to discuss his case with him before advising him to enter the plea lacked credibility.  The court was not required to accept the claims made in Philthilath's declaration simply because the public defender was not available to refute them.  (*People v. Hunt* (1985) 174 Cal.App.3d 95, 103 [in deciding defendant's motion to withdraw his plea, "the trial court is not bound by uncontradicted statements of the defendant"].)

Nor was it improper for the trial court to consider its own observations regarding the public defender's skill and professionalism in the courtroom, as such observations were relevant to its assessment of the credibility of Philthilath's claim that the public defender rushed him into entering a plea without discussing his case with him.  In ruling on a motion to withdraw a plea, the court may take into account the defendant's credibility and interest in the outcome of the proceedings.  (*People v. Ravaux* (2006) 142 Cal.App.4th 914, 918.)  Absent any contrary showing in the record, we defer to the trial court's credibility assessment of Philthilath's claims regarding his counsel's alleged failings.  (*Ibid.*)

Based on the above, the trial court did not abuse its discretion in denying Philthilath's motion to withdraw his no contest plea.  Philthilath did not establish, by clear and convincing evidence, that the exercise of his free judgment was overcome.  Nor is there any indication in the record that his plea was not voluntarily made.[3]  We cannot say that the trial court's denial of Philthilath's motion to withdraw his guilty plea was

---

[3]    In this regard, we reject Philthilath's claim that the trial court should have inquired into whether he had sufficient time to speak with his defense counsel before entering his plea.  His claim is based on this brief exchange during the change-of-plea hearing:  "THE COURT:  And have you had now enough time to talk to your attorney about this?  Do you want some more time?  [¶]  THE DEFENDANT:  No, just go ahead and go with this."  Philthilath's "no" response was not ambiguous but clearly addressed to the court's second question of whether he wanted more time to talk to his attorney. We find his arguments to the contrary unpersuasive.

arbitrary, capricious or exceeded the bounds of reason. (*Shaw*, *supra*, 64 Cal.App.4th at p. 496.)

## II.    *Custody Credits*

Philthilath contends, and the People concede, he is entitled to additional custody credits under section 4019. Philthilath received 189 days credit for actual time, and only 94 days of conduct credit. He should receive a total of 377 days credit, consisting of 189 actual days, and 188 days of conduct credit. (§ 4019, subds. (f), (h).)

## DISPOSITION

The judgment is affirmed as modified. The superior court is directed to correct the judgment to reflect 189 days of actual custody and 188 days of local conduct credit for a total of 377 days of presentence custody credits. The superior court is ordered to prepare and send a copy of the amended abstract of judgment to the appropriate authorities.