Filed 2/4/21  P. v. Prado CA1/3
## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ERIC ORLANDO PRADO,<br><br>    Defendant and Appellant. | A158041<br><br>(Solano County<br>Super. Ct. No. VCR227850) |

Defendant Eric Orlando Prado appeals from a judgment entered after the trial court denied his motion to withdraw his plea of guilty.  He contends the court abused its discretion in denying his motion to withdraw his plea under Penal Code section 1018.[1]  Alternatively, he claims his plea is invalid because he received ineffective assistance of counsel.  We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

In October 2016, the People charged defendant by complaint with three felonies:  assault with a deadly weapon (§ 245, subd. (a)(1)) with an enhancement for personal infliction of great bodily injury (§ 12022.7, subd. (a)); attempted second degree robbery (§ 213, subd. (b)); and carrying a dirk or dagger (§ 21310).  In April 2017, defendant pled no contest to an

---

[1]    All further statutory references are to the Penal Code.

added felony count for assault by means likely to produce great bodily injury (§ 245, subd. (a)(4)), and to the charge of carrying a dirk or dagger, which was reduced to a misdemeanor. At the change of plea hearing, the prosecutor set out the factual basis for the plea: while walking with the victim, defendant struck the victim in the back of the head; he kicked the victim twice in the face and eyes while the victim was on the ground; and he possessed a knife when officers spoke to him afterward. The trial court dismissed the remaining charges with a *Harvey* waiver. (*People v. Harvey* (1979) 25 Cal.3d 754.) During his change of plea proceedings, defendant was represented by attorney Marjaneh Maroufi of the Solano County Alternate Public Defender's Office.

On May 18, 2018, defendant filed a motion to withdraw his plea. In this motion, he asserted the charges were based on the victim's statement to police at the hospital that around midnight, while he and defendant were walking, defendant suddenly struck the victim in the back of the head with a baseball bat, struck the victim in the knee with the bat, kicked the victim in the face a few times after he fell to the ground, then demanded the victim's cell phone. For his part, defendant told the police the day after the alleged incident that the victim attacked him first by swinging a metal pipe at him, that defendant acted in self-defense by swinging a baseball bat at the victim and striking the victim in the leg, and that defendant then kicked the victim in the face and left the area. Defendant sought to withdraw his plea pursuant to section 1018 because he was unaware that the victim's medical records showed the victim had no injuries consistent with being hit in the back of the head with a baseball bat. In a declaration accompanying the motion, defendant's then attorney, Thomas Barrett, indicated that the

2

prosecutor never obtained the medical records and that Barrett himself obtained them through a subpoena after defendant entered his plea.

Defendant provided his own declaration in which he explained he entered the plea the day before his scheduled preliminary hearing after meeting with Maroufi, who told him that the prosecutor offered a " 'non-strike' for probation and that [defendant] would get out of jail" at sentencing. Defendant understood the offer would lapse if the preliminary examination went forward, and Maroufi advised him it was a "good offer" so he accepted it. After accepting the offer, however, defendant realized he had not seen the victim's medical records. Had defendant seen the medical records, which were favorable to his defense, defendant never would have accepted the offer.

In June 2018, defense attorney Amy Morton replaced Barrett. Morton supplemented the previously filed motion to withdraw the plea with a memorandum arguing, beyond section 1018, the motion should be granted due to Maroufi's ineffective assistance in failing to obtain and review the medical records which would have discounted the charged great bodily injury enhancement and cast doubt on the victim's credibility. This memorandum argued that Maroufi's failure to investigate caused defendant to unwillingly and unknowingly enter the plea. Defendant reiterated that he did not know the medical records corroborated his version of events, i.e., that he did not strike the victim in the back of the head with a bat and that he acted in self-defense. Morton also supplemented the motion with the declaration of Barry K. Newman, an experienced criminal defense attorney. Newman opined that Maroufi provided defendant with constitutionally inadequate representation by failing to obtain and review the subject medical records before considering plea bargains. He stated the medical records would have bolstered the

3

defense by showing the victim lied and by eliminating the basis for the charged great bodily injury enhancement.

At a contested hearing on the motion, defendant called Newman as a witness, who largely reiterated the statements in his declaration. Defendant also called Maroufi, who testified she met with defendant before he entered the plea and discussed what a good plea versus a bad plea would look like, and potential probation terms. She recalled defendant had not previously suffered a felony conviction.

Maroufi further testified that, at some point, she asked the prosecutor about the victim's medical records, but the prosecutor did not have them, indicating it was an oversight, and she never actually saw them although she made a note to get them. Maroufi did see and did show defendant multiple pictures, apparently taken by a police officer, of the victim's injuries, including those to the victim's face and his legs. Maroufi did not see anything in the police report documenting a serious injury to the back of the victim's head, and she and defendant discussed the fact that if there were injuries to the back of the victim's head, the police officer surely would have taken photos of those injuries just as he did with the victim's other injures. When asked if the great bodily injury enhancement was based on alleged blows to the back of the victim's head, Maroufi testified that was an assumption being made.[2]

With regard to the subject plea, Maroufi testified she informed defendant that the prosecutor was offering him a plea to a nonstrike offense, and for probation with credit for time served at sentencing. She recalled discussing with defendant that he would not plead to the great bodily injury

_____

[2]     There is nothing in the record that clearly reflects the prosecutor's theory underlying the great bodily injury enhancement.

4

enhancement, and recalled telling defendant the plea offer was a good one because the prosecutor dropped the great bodily injury enhancement making the assault a nonstrike offense. She did not recall discussing the fact she had not yet seen the medical records with defendant, nor did she recall defendant emphasizing he had not hit the victim in the back of the head with a bat. Defendant appeared to understand the plea and be comfortable with it, and "he essentially jumped on it" without hesitation. Maroufi stated the medical records would have assisted her negotiations with the prosecutor, particularly in arguing to the prosecutor that the victim lacked credibility, and she indicated she had other evidence concerning the victim's prior propensity for violence.

After hearing the evidence, the trial court denied the motion to withdraw the plea. The court found no grounds warranting withdrawal of the plea, indicating it did not believe Maroufi provided ineffective assistance in part because the photos of the victim's injuries supported the section 245, subdivision (a)(4) charge that defendant ultimately pled to; Maroufi had discussed the terms of the offer with defendant; and defendant obtained a substantial benefit, avoiding two strike offenses. The court also found defendant did not enter the plea due to anything like mistake or ignorance, and instead it appeared he entered the plea knowingly, intelligently, and voluntarily. The court found "[defendant] wanted that plea . . . knowing the facts as he knew [them]" and knowing his own position that "there was no bat used" and "the injuries here were only photographed in front" and "[s]o . . . everybody assumed there was no injury to the back of the head." Regarding defendant's statement in his declaration that he knew the plea offer would be off the table if he had a preliminary examination, the court observed: "that is something that happens, and the lawyer and client has [*sic*] to make the best

5

call whether they want to accept this offer. There is always a gamble in terms of . . . whether you go to prelim or not, how that testimony of the victim might shake out."

In July 2019, the trial court sentenced defendant to a total term of four years: three years for the section 245, subdivision (a)(4) count, and one year for the section 21310 count. At his sentencing, defendant opted not to take probation and, based on the amount of credits he accumulated, was released. Defendant filed a notice of appeal and obtained a certificate of probable cause to challenge the validity of his plea.

<strong>DISCUSSION</strong>

## A. Section 1018

Section 1018 provides that a guilty plea may be withdrawn before judgment for good cause shown. "To establish good cause to withdraw a guilty plea, the defendant must show by clear and convincing evidence that he or she was operating under mistake, ignorance, or any other factor overcoming the exercise of his or her free judgment, including inadvertence, fraud, or duress. [Citation.] The defendant must also show prejudice in that he or she would not have accepted the plea bargain had it not been for the mistake." (*People v. Breslin* (2012) 205 Cal.App.4th 1409, 1416.) "A plea may not be withdrawn simply because the defendant has changed his [or her] mind." (*People v. Nance* (1991) 1 Cal.App.4th 1453, 1456.) "A trial court's decision whether to permit a defendant to withdraw a guilty plea under section 1018 is reviewed for abuse of discretion." (*People v. Patterson* (2017) 2 Cal.5th 885, 894.)

In the present case, defendant claims the trial court abused its discretion in denying his section 1018 motion because when he entered the plea he was ignorant of the medical records, which could have been used to

6

undermine the charge that he used a deadly weapon to inflict great bodily injury and to undermine the victim's credibility. As a preliminary matter, we assume the great bodily injury enhancement was charged because of the victim's allegation that defendant hit him in the back of the head with a baseball bat. But even if defendant did not know the content of the medical records, he nonetheless acknowledges he was "never ignorant of what his own actions were during his confrontation" with the victim.

More significantly, defendant knew there were other circumstances casting doubt on the victim's claim that defendant struck him in the back of the head with a bat. Namely, Maroufi testified that defendant saw photographs of the injuries he had inflicted on the victim's face and legs, and that she and defendant discussed the fact that there were no police photographs of any injuries to the back of the victim's head, even though such photographs surely would have been taken if there were such injuries. Similarly, Maroufi had testified the police report did not document a serious injury to the back of the victim's head. Thus, regardless of whether defendant knew the contents of the medical records before his plea, defendant was clearly aware of circumstances that aligned with his version of the events and supported a potential defense to the great bodily injury enhancement and a defense of self-defense.

Additionally, relevant to the prejudice requirement, the record does not establish that defendant would not have accepted the plea bargain had he been aware of the medical records. As the trial court implicitly suggested, the medical records did not significantly alter the strength of the prosecution's case. At best, the medical records might have further confirmed what defendant alleged all along, i.e., that the victim incorrectly reported defendant struck him in the back of the head with a baseball bat. The

7

medical records also might have assisted the claim of self-defense to the assault count and an attack on the victim's credibility. But the photographic evidence and police report—which were available to defendant before his pleas—already tended to show that the victim incorrectly reported defendant struck him in the back of the head with a baseball bat, and already called into question the victim's credibility. Additionally, the defense was in possession of evidence concerning the victim's prior record of violence, which ostensibly could have been used to bolster defendant's self-defense claim and an attack on the victim's credibility.

Against this backdrop, recall that defendant admitted striking the victim with a baseball bat, albeit in the victim's leg, and that defendant had no apparent defense to the separate felony charge of carrying a dirk or dagger.[3] The subject plea offer was made the day before defendant's scheduled preliminary hearing and would lapse if that hearing went forward. The plea sidestepped both of the charged strikes and secured reduction of the felony charge for carrying a dirk or dagger to a misdemeanor. Defendant also avoided any uncertainty regarding what charges the evidence at the preliminary hearing might support, and secured a promise for probation and credit for time served at sentencing. Maroufi testified that defendant not only appeared to understand and be comfortable with the plea offer, but that "he essentially jumped on it" without hesitation.

On this record, we cannot say the trial court abused its discretion in determining that defendant failed to show good cause to withdraw his plea. In reaching our conclusion, we note: "All decisions to plead guilty are heavily

---

[3]     As summarized in the probation report, the police report stated that when the sheriff's deputies located defendant the day after the incident, defendant was in possession of two large fixed-blade knives.

influenced by difficult questions as to the strength of the prosecution's case and the likelihood of securing leniency. [Citation.] ' "Considerations like these frequently present imponderable questions for which there are no certain answers; judgments may be made that in the light of later events seem improvident, although they were perfectly sensible at the time. The rule that a plea must be intelligently made to be valid does not require that a plea be vulnerable to later attack if the defendant did not correctly assess every relevant factor entering his [or her] decision." ' " (*People v. Breslin*, *supra*, 205 Cal.App.4th at p. 1417.)

Defendant's reliance on *People v. Ramirez* (2006) 141 Cal.App.4th 1501 (*Ramirez*) is unavailing. In *Ramirez*, the defendant was identified as the perpetrator of an armed carjacking by a victim, and the police caught him driving a stolen vehicle that had been the fruit of a separate armed carjacking. (*Id.* at pp. 1503–1504.) The prosecution charged him with carjacking, armed carjacking, armed robbery, unlawful driving of a vehicle, and evading police. (*Id.* at p. 1503.) Based on the initial police reports and the court informing him that he faced a maximum sentence of 17 years 8 months in prison and three strike priors, the defendant pled no contest to armed robbery and evading arrest, a 12-year sentence with one strike prior. (*Id.* at p. 1504.) Before sentencing, however, he discovered the prosecutor had withheld a supplemental police report revealing that certain eyewitness evidence would have significantly weakened the evidence supporting the carjacking charges and might have supported other possible defenses to the other charges. (*Id.* at pp. 1504–1507.) The trial court denied the defendant's motion to withdraw the plea based on discovery of the supplemental report. (*Id.* at p. 1505.) The Court of Appeal reversed, concluding that, under the facts of the case, the trial court abused its discretion because "[t]he

9

supplemental report identified new defense witnesses, potentially reduced [the defendant's] custody exposure, and provided possible defenses to several charges, thereby casting the case against him in an entirely different light." (*Id.* at pp. 1507–1508.)

In the case before us, defendant does not claim the prosecution possessed or withheld exculpatory evidence. More to the point, while the medical records might have assisted the defense in plea bargaining, they did not identify new defense eyewitnesses to the actual confrontation between defendant and the victim. The records did not (as discussed) reveal any new defense, nor can it be said they "cast[ ] the case against him in an entirely different light." (*Ramirez*, *supra*, 141 Cal.App.4th at p. 1508.)

In sum, defendant has not established that the trial court abused its discretion when it denied his motion to withdraw his plea.

## B. Ineffective Assistance of Counsel

Defendant also contends his plea is invalid due to ineffective assistance of counsel. He alleges Maroufi performed deficiently by advising him about the merits of the plea offer without first obtaining and reviewing the medical records to determine what evidence supported the charges. He further claims he would not have accepted the plea offer but for counsel's deficiency.

To prove one has suffered from ineffective assistance of counsel, a defendant must show both that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms, and the deficient performance prejudiced the defendant. (*Strickland v. Washington* (1984) 466 U.S. 668, 687.) "Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to

10

conclude that a particular act or omission of counsel was unreasonable. [Citation.] A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and *to evaluate the conduct from counsel's perspective at the time*. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ." (*Id.* at p. 689, italics added.)

"A defendant who raises the issue on appeal must establish deficient performance based upon the four corners of the record. 'If the record on appeal fails to show why counsel acted or failed to act in the instance asserted to be ineffective, unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation, the claim must be rejected on appeal.' " (*People v. Cunningham* (2001) 25 Cal.4th 926, 1003.) In the context of pleas entered due to ineffective assistance of counsel, a "defendant must show that there is a reasonable probability that, but for counsel's errors, he [or she] would not have pleaded guilty and would have insisted on going to trial." (*Hill v. Lockhart* (1985) 474 U.S. 52, 58–59.)

Here, for the same reasons discussed above as to why defendant failed to establish prejudice with regard to his section 1018 claim, defendant similarly fails to establish prejudice to support his ineffective assistance claim.

Additionally, defendant does not demonstrate counsel performed deficiently. Maroufi had a general duty to communicate the offer to defendant. (*Missouri v. Frye* (2012) 566 U.S. 134, 145.) The circumstances at the time of the plea appear to be as follows. Defendant maintained he never

hit the victim in the back of the head with the baseball bat, but he admitted to the police that he hit the victim in the leg with the bat and kicked him in the face. The police report did not describe serious injuries to the back of the victim's head, and there were no photographs showing the back of the victim's head. Police photographs, however, did show injuries to the front of the victim's head and to his legs. Maroufi and defendant discussed the photographs and the fact that the officer surely would have taken photographs of injuries to the back of the victim's head if they existed, just as he did for the injuries to the victim's face. Defendant was found with two large knives the day after the incident with the victim, and never claimed to have any defense to the charge for possession of a dirk or dagger. The plea dismissed all strike offenses, reduced the felony possession of a dirk or dagger charge to a misdemeanor, and secured a promise of probation and credit for time served at sentencing.

Beyond the foregoing, there is little evidence about Maroufi's efforts to obtain the medical records, aside from her testimony that she made a note in her file she needed to get them, that she did orally request them from the prosecutor, and that the prosecutor indicated it was an oversight that he did not have them. There is no evidence about whether it was feasible for Maroufi to obtain them in the short time before the plea offer expired. Considering the circumstances, we cannot say counsel performed deficiently by evaluating the offer based on what she knew at the time, and advising defendant the offer was a good one without first seeing the medical records.

## DISPOSITION

The judgment is affirmed.

_____

Fujisaki, Acting P. J.

WE CONCUR:


_____

Petrou, J.


_____

Wiseman, J.*


A158041
*People v. Prado*

_____

* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.