Filed 10/5/15  P. v. Lightle CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Siskiyou)

----

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JOHN JACOB LIGHTLE,<br><br>    Defendant and Appellant. | C077831<br><br>(Super. Ct. Nos.<br>MCYKCRF14-0012,<br>MCYKCRF14-0471) |

Defendant John Jacob Lightle appeals from the trial court's order denying his motion to withdraw his guilty plea (Pen. Code, § 1018),[1] as well as from the judgments after sentencing conducted that same day.  Defendant entered guilty pleas in two separate cases, an assault case and a drug possession case.  On appeal, defendant first contends the trial court abused its discretion in denying his motion to withdraw his plea in the assault

---

[1] Further undesignated statutory references are to the Penal Code.

1

case in light of what he describes as his good cause to do so. Defendant next contends the provisions of Proposition 47, the Safe Neighborhoods and Schools Act, apply retroactively to reduce his conviction for drug possession to a misdemeanor. Disagreeing with both contentions, we shall affirm.

## BACKGROUND

*Case No. MCYKCRF 14-0012 (The Drug Possession Case)*

On December 30, 2013, Yreka police arrested defendant on a warrant while he was loitering outside a Walmart. He was searched and found to possess 10 small plastic bindles of methamphetamine. He was charged with possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a); count 1) and felony failure to appear (§ 1320.5; count 2), as well as a prior prison term (§ 667.5, subd. (b)).

*Case No. MCYKCRF 14-0471 (The Assault Case)*

Siskiyou County Sheriff's Deputy Nowdesha was on duty at department headquarters in Yreka on September 7, 2013. He heard a car pull into the parking lot. Nowdesha went outside and saw (witness) Charles McLeran get out of the car on the driver's side. He saw another man, later identified as (victim) Malcolm Strickland, seated and bleeding in the passenger seat. Strickland told Nowdesha that he had been jumped by two men and stabbed by one. Nowdesha saw multiple stab wounds on Strickland's arm and back.

Yreka Police Department Officers Fahrney and Duncan arrived at the scene, and then waited with Strickland for emergency medical personnel to arrive. While they were waiting, Strickland told Nowdesha and Fahrney that he had gone to see an acquaintance at a trailer in Yreka. As Strickland was approaching the trailer, two men attacked him. Strickland recognized defendant, who he knew, as one of his assailants. According to Strickland, defendant pulled out a knife and stabbed him. Emergency medical personnel arrived and transported Strickland to the hospital.

2

Nowdesha and Fahrney then spoke with McLeran, who said he witnessed the attack from his car, which was parked approximately 20 to 30 yards away. As Strickland approached the gate to the trailer, two white men emerged from a nearby shed and attacked him. McLeran recognized defendant (who he knew from previous encounters) by his red hair, and identified him as one of Strickland's assailants. McLeran saw defendant punch and kick Strickland. He also saw defendant stab Strickland at least twice. During the attack, McLeran heard defendant and the other assailant say they were going to "finish it off," leading McLeran to believe they intended to kill Strickland.

McLeran explained that defendant was angry with Strickland because he had been romantically involved with defendant's ex-girlfriend, Tatiana Morrison. McLeran told Nowdesha he was concerned for Strickland's safety, as defendant had previously threatened to stab Strickland, and "could come back and finish the job."

Nowdesha interviewed Strickland again at the hospital. Strickland was initially unwilling to name his assailants because he did not want to be viewed as a " 'snitch.' " However, he acknowledged that he recognized defendant as Morrison's ex-boyfriend. He explained that he was looking down at his cell phone as he walked towards the gate to the trailer. He looked up and saw defendant approaching; defendant then hit him. Strickland then saw the other man, and both defendant and the other man knocked Strickland to the ground. One of the men produced a knife and stabbed him multiple times. After the stabbing, Strickland lay on the ground and the two men left. McLeran then came and helped Strickland into his car and drove him to get help.

Strickland was released from the hospital and appeared at the sheriff's office several days later. He was holding a copy of the local newspaper and asked to speak with Nowdesha. In the paper were photographs of two white men, one of whom was identified as defendant. Strickland explained that "the guys on the front page were not the suspects who assaulted him." Strickland also said that he did not want to press

charges against his assailants. Strickland denied having been intimidated into changing his story.

On April 21, 2014, defendant was charged by information with assault with a deadly weapon (§ 245, subd. (a)(1); count 1), assault by means of force likely to produce great bodily injury (§ 245, subd. (a)(4); count 2), carrying a dirk or dagger concealed on his person (§ 21310; count 3), being a felon in possession of ammunition (§ 30305, subd. (a)(1); counts 4 and 5), possession of a firearm by a felon (§ 29800, subd. (a)(1); count 6), carrying a loaded firearm (§ 25850, subd. (c)(1); count 7), possession of a firearm with an altered serial number (§ 23920; count 8), possession of narcotics paraphernalia (Health & Saf. Code, § 11364.1; counts 9 and 10), and possession of less than 28.5 grams of marijuana (Health & Saf. Code, § 11357, subd. (b); count 11). With respect to count 2, the information alleged that defendant personally inflicted great bodily injury. (§ 12022.7, subd. (a).) The information further alleged that defendant had served a prior prison term. (§ 667.5, subd. (b).)

*Preliminary Hearing*

The trial court conducted a preliminary hearing in the assault case on April 17, 2014. During the preliminary hearing, Nowdesha testified that Strickland identified defendant as one of his assailants, and the person who stabbed him, upon arriving at sheriff's department headquarters on September 7, 2013. Nowdesha also testified that McLeran had also identified defendant as one of Strickland's assailants, and the person who stabbed him.

Nowdesha acknowledged that Strickland subsequently recanted his identification of defendant as one of the two men who attacked him. Nowdesha testified that he re-interviewed McLeran upon learning that Strickland had recanted. According to Nowdesha, McLeran again insisted that defendant was the man who stabbed Strickland.

Following Nowdesha's testimony, defense counsel argued, "Mr. Strickland gave a statement at the scene, but then came in after the incident showing photographs of who

4

the sheriff's department believed was responsible for this incident and came in and said these were not the guys. [¶] So when we finally get together an actual photograph of who these two parties believe did this incident, the complaining witness at the scene points out and says, 'No, you have got it wrong. This is not who stabbed me. This isn't who did it.' Prior to that we are just speaking in vague terms about who may have been there and who was doing what. But when the photograph was shown of who the sheriff's office believes is performing this action, the alleged victim comes in and says, 'No, that wasn't the person.' " The trial court held defendant to answer on all charges.

*Pleas and Probation Report*

On April 29, 2014, pursuant to a negotiated plea agreement, defendant pleaded guilty to counts 1 and 2 (possession of methamphetamine and failure to appear) in the drug possession case and counts 1, 3, 6, and 9 (assault with a deadly weapon, carrying a concealed dirk or dagger, possession of a firearm by a felon, and possession of narcotics paraphernalia) in the assault case. In exchange for his pleas and admission, defendant was promised a sentence of five years four months in prison and dismissal of any remaining counts as well as an unrelated case.

During the plea colloquy, the following exchange took place:

"THE COURT: Mr. Lightle, is there anything at all going on this morning about your cases that is causing you any confusion at this point?

"[DEFENDANT]: No.

"THE COURT: Okay. Now, you are hesitating, Mr. Lightle. I need to make sure that you are doing this as a matter of your own free will. And I can understand that this is a difficult situation for you. I understand that you are entering pleas that are going to be part of an intent, or agreed upon course of action, that is going to result in a five-year formal CDCR term. And I realize that process is not pleasant to you. I can assume that that's part of what I'm reading here. Are you nonetheless doing this voluntarily?

5

"[DEFENDANT]: Yes.

"THE COURT: Okay. And this is the way that you want to proceed in this – these cases?

"[DEFENDANT]: No. I want to take the assault with the deadly weapon [charge] to jury trial.

"THE COURT: Okay. So you are changing your mind?

"[DEFENDANT]: Yes.

"THE COURT: Okay. Go ahead and have a -- let's trail the matter. [¶] And you have another discussion with your client, [defense counsel], and we'll recall the matter before lunch, and with your coming back –

"[DEFENDANT]: Or, no -- I'll take the -- guilty -- eleven years -- potential eleven years, eight months, is better than -- five years eight months with half is better than -- you know what I mean -- eleven years, eight months.

"THE COURT: I understand -- I understand that's why you may be taking this deal, Mr. Lightle. And, yet, I want the record to reflect that I'm watching Mr. Lightle as we conduct this inquiry. He is obviously listening very, very carefully. And he is obviously thinking carefully about what's being communicated to him and he is thinking about the responses. And, obviously, as is indicated on the record, he is having some difficulty dealing with the choices he has before him here in the presence of the Court. In the last 45 or 50 seconds he has changed his mind.

"The Court understands how these can be difficult decisions; but, Mr. Lightle, I have to make sure in my own mind that this is what you want to do. And you have changed your mind in my presence. I understand that. I suspect that that could be the case. What I'm going to do is, I'm going to ask you to go back in, we are going to trail the matter, and we are going to come back out here before lunch."

6

The trial court recalled defendant's case a short time later. The following colloquy took place:

"THE COURT: Mr. Lightle, did you have some more time to think this over?

"[DEFENDANT]: Yes.

"THE COURT: Did you find that helpful?

"[DEFENDANT]: Yes.

"THE COURT: Okay. Are you confident in what you want to do today?

"[DEFENDANT]: Yes.

"THE COURT: And what is that?

"[DEFENDANT]: Take the guilty plea, five years, four months, with half time.

"THE COURT: Very well. I am seeing a different expression on your face now. You appear to be confident that this is what you choose to do this morning.

"[DEFENDANT]: Yes, sir.

"THE COURT: Okay.

"[DEFENDANT]: The reason for it, your Honor, I'll be leaving my significant other out there in the world, I'm homeless with nothing. It's just really hard because we were struggling before I got arrested and knowing that I'm leaving her out there with nothing, it's just really hard.

"THE COURT: Very well, I -- I certainly understand and respect that, Mr. Lightle. So your comments are certainly noted.

"[DEFENDANT]: Thank you.

"THE COURT: Okay. Is there anything else you want to discuss with the Court before you proceed, Mr. Lightle?

"[DEFENDANT]: No.

The trial court heard and accepted defendant's pleas, finding that they were made "willingly . . . with a full understanding of the nature of the charges and allegations, as well as a full understanding of the consequences of the pleas and admissions, as those have been explained to him on the record and in the plea form, which is before the Court." The trial court also found a factual basis based on the parties' stipulations as well as the preliminary hearing transcript and police reports.

Defendant's sentencing was scheduled for September 25, 2014. The probation report indicated that: "[Strickland] stated he did not know who assaulted him but they were not the ones in the newspaper article because they were 'white guys.' He said the people who assaulted him were 'black guys.' "

*Motion to Withdraw Plea and Sentencing*

Defendant filed a motion to withdraw his guilty pleas on September 24, 2014, the day before the sentencing hearing. The motion was accompanied by a declaration from defendant's newly appointed trial counsel, Leslie Salem. Salem averred in pertinent part: "On May 13, 2014, I was appointed . . . to advise the defendant about moving to withdraw his pleas. [¶] Former counsel informed me that he had received a voice-mail message from the jail from the alleged victim, Malcolm Strickland, stating that the defendant was not the person who stabbed him. Mr. Strickland also told the probation officer that defendant was not the person who stabbed him. . . . I subpoenaed Mr. Strickland to testify at the sentencing hearing so that he could be put under oath after learning that no victim statement had been obtained from him. [¶] On August 19, 2014, Mr. Strickland was not permitted to testify. The District Attorney's Office represented to the court that the victim had told an employee of the victim witness office that he had nothing he wanted [to] say to the court. [¶] Yesterday, I spoke with Mr. Strickland. He said that he told the victim witness advocate that he wanted to tell the court that 'they had the wrong guy.' He told me he is unwilling to sign a declaration to that effect without the advice of counsel."

The motion was also accompanied by a declaration by defendant. Defendant's declaration stated in pertinent part: "The prosecutor in this case, Ms. Martha Aker, is prejudiced against me. She knew me when I was in high school and dislikes me because she caught me with her stepson doing drugs in her backyard."

The trial court denied the motion, finding in pertinent part that defendant's awareness of the victim's recantation preceded his change of plea.

The trial court then sentenced defendant in accordance with the plea agreement to an aggregate state prison term of five years four months. Defendant filed a timely notice of appeal which references both cases.

## DISCUSSION

### I

*Defendant's Motion to Withdraw His Pleas*

Defendant first contends the trial court abused its discretion by denying his motion to withdraw his pleas. We disagree.

Section 1018 permits a defendant to move to withdraw his plea for good cause at any time before judgment is entered. (§ 1018.)[2] To establish good cause, a defendant must show by clear and convincing evidence that his plea was the result of mistake, ignorance, or any other factor overcoming the exercise of free judgment. (*People v. Cruz* (1974) 12 Cal.3d 562, 566.) However, a defendant must establish that his free will was overcome, not merely that he had a change of heart. (*People v. Nance* (1991) 1 Cal.App.4th 1453, 1456.)

A trial court's decision to grant or deny a defendant's motion to withdraw his plea is reviewed for abuse of discretion. (*People v. Mickens* (1995) 38 Cal.App.4th 1557,

---

[2] Section 1018 provides in pertinent part: "On application of the defendant at any time before judgment . . . the court may, . . . for a good cause shown, permit the plea of guilty to be withdrawn and a plea of not guilty substituted. . . . This section shall be liberally construed to effect these objects and to promote justice."

1561.)  In determining whether a defendant has shown good cause for granting a motion to withdraw his plea, the reviewing court must adopt the trial court's factual findings if they are supported by substantial evidence.  (*People v. Fairbank* (1997) 16 Cal.4th 1223, 1254.)

Defendant contends Strickland's recantation establishes the requisite good cause to withdraw his guilty pleas.  He relies on a number of intermediate federal appellate cases, including *United States v. Groll* (7th Cir. 1993) 992 F.2d 755 (*Groll*) and *United States v. Jones* (D.C. Cir. 2011) 642 F.3d 1151 for the proposition that a viable claim of innocence constitutes good cause for a motion to withdraw a plea.

Preliminarily, we observe that intermediate federal appellate decisions, while they may be of persuasive value, are not binding on state courts.  (*Alameida v. State Personnel Bd.* (2004) 120 Cal.App.4th 46, 61.)  That said, California courts have recognized that "the withdrawal of a plea of guilty should not be denied in any case where it is in the least evident that the ends of justice would be subserved by permitting the defendant to plead not guilty instead; and it has been held that the least surprise or influence causing a defendant to plead guilty when he has any defense at all should be sufficient cause to permit a change of plea from guilty to not guilty." (*People v. McGarvy* (1943) 61 Cal.App.2d 557, 564; accord *People v. Ramirez* (2006) 141 Cal.App.4th 1501, 1507 (*Ramirez*).)  Applying this principle, some courts have held that clear and convincing newly discovered evidence of factual innocence can constitute good cause for withdrawing a guilty plea.  (*Ramirez, supra*, at pp. 1506-1507; accord *People v. Singh* (1957) 156 Cal.App.2d 363, 366 [trial court did not abuse its discretion in denying motion to withdraw plea based on newly discovered evidence negating element of crime because defendant offered no affidavits and failed to establish grounds for motion by clear and convincing evidence]; see also § 1018 [this "section shall be liberally construed . . . to promote justice"].)

For example, in *Ramirez*, defense counsel discovered a previously undisclosed supplemental police report after the defendant had pleaded no contest to armed robbery and evading arrest in exchange for the dismissal of carjacking and unlawful driving charges. (*Ramirez, supra,* 141 Cal.App.4th at pp. 1503-1504.) The report contained witness statements indicating the defendant was not present during the carjacking and had been an unwilling passenger during a later police chase. (*Id.* at pp. 1504-1505.) Noting the "state's suppression of favorable evidence is an extrinsic cause which may overcome the exercise of free judgment," the *Ramirez* court held the defendant established good cause to withdraw his plea because the prosecution had ample time prior to the plea to turn over the report. (*Id.* at pp. 1506-1507.) For purposes of analysis, we assume without deciding that clear and convincing *newly discovered evidence of factual innocence* constitutes good cause for granting a motion to withdraw a guilty plea under section 1018.[3] We next consider whether defendant presented any such evidence to the trial court.

As the trial court observed, defendant's trial counsel was aware of Strickland's recantation at the time of the preliminary hearing, *before defendant entered his pleas*. (RT 77-78) Although Strickland subsequently elaborated upon his recantation, claiming his attackers were "black guys," the basic outline of his story--that defendant was not the person who stabbed him--remained the same. Thus, unlike the defendant in *Ramirez*, defendant was aware of the potentially exculpatory evidence at the time he entered his plea. We agree that this evidence was not newly discovered by any measure, and hold that the trial court did not abuse its discretion in so finding.

Because we hold the evidence of Strickland's recantation was not newly discovered, we need not analyze at length his claim that the recantation establishes a

---

[3] We note, however, that newly discovered evidence is not listed as an instance of "good cause" for a motion to withdraw a plea pursuant to section 1018.

11

viable claim of factual innocence, and therefore constitutes good cause for withdrawing his plea. Suffice it to say that, given the conflicting statements by Strickland and the sequence of events reflected by the record and described in detail *ante*, the trial court could reasonably conclude that defendant failed to present clear and convincing evidence of factual innocence.

Our role in determining whether defendant satisfied his burden of producing clear and convincing evidence in the trial court is a limited one, because " '[a]ll questions of the weight and sufficiency of the evidence are addressed, in the first instance, to the trier of fact, in this case, the trial judge. We cannot reverse his order if there is substantial evidence or a reasonable inference to be drawn from it which supports the order. Where two conflicting inferences may be drawn from the evidence it is our duty to adopt the one supporting the challenged order.' " (*People v. Harvey* (1984) 151 Cal.App.3d 660, 667.) Here, Strickland's recantation was not only inconsistent with his original account of the stabbing, it was also inconsistent with McLeran's. Strickland's recantation was also somewhat implausible, considering that Strickland went from identifying a specific person, who was known to him, to unidentified "black guys." On this record, the trial court could reasonably credit Strickland's original identification, and discredit his subsequent recantation, particularly in light of Strickland's reluctance to name his attackers and possible fear of retaliation, as well as his refusal to explain his position in court or complete a declaration.

Relying on *Groll*, defendant contends the trial court should have conducted an evidentiary hearing into Strickland's recantation. Like *Jones*, *Groll* addresses the Federal Rules of Criminal Procedure, and is therefore inapplicable. Furthermore, *Groll* suggests that an evidentiary hearing is *not* required where, as here, "the record indicates that the defendant was aware of the reasons supporting her motion to withdraw when she entered her plea." (*Groll, supra*, 992 F.2d at p. 758.) We therefore reject defendant's contention.

12

Finally, defendant emphasizes that he entered his pleas "reluctantly." However, a defendant's reluctance or uncertainty about whether to plead does not make the plea involuntary and is not sufficient to show good cause to withdraw the plea. (*People v. Huricks* (1995) 32 Cal.App.4th 1201, 1209; see *People v. Hunt* (1985) 174 Cal.App.3d 95, 104 [motion to withdraw plea properly denied where plea was "against [the defendant's] better judgment"].) Here, the trial court carefully observed defendant's demeanor, noting defendant's hesitation, and repeatedly asked whether defendant was sure about his decision to plead guilty. When defendant said that he wanted to change his plea, the court gave him additional time to confer with his counsel. When the court recalled his cases, defendant confidently affirmed that he wanted to plead guilty. On this record, "[t]he fact that [defendant] may have been persuaded, or was reluctant, to accept the plea is not sufficient to warrant the plea being withdrawn." (*People v. Ravaux* (2006) 142 Cal.App.4th 914, 919.) The trial court did not abuse its discretion in denying defendant's motion to withdraw his pleas.

II

*Proposition 47*

Next, defendant contends the provisions of Proposition 47, the Safe Neighborhoods and Schools Act, apply retroactively to reduce his drug possession conviction to a misdemeanor. We disagree.

Proposition 47 provides that defendant's crime of conviction, possession of methamphetamine, is a misdemeanor unless certain exceptions apply. It also added section 1170.18, subdivision (a) which provides that a person who is "currently serving a sentence for a conviction . . . of a felony or felonies who would have been guilty of a misdemeanor under the act that added this section . . . had this act been in effect at the time of the offense may petition for a recall of sentence before the trial court that entered the judgment of conviction in his or her case to request resentencing . . . ."

13

Defendant argues that pursuant to *In re Estrada* (1965) 63 Cal.2d 740, the provisions of Proposition 47 operate retroactively to reduce his drug possession conviction to a misdemeanor. *Estrada* held: "When the Legislature amends a statute so as to lessen the punishment it has obviously expressly determined that its former penalty was too severe and that a lighter punishment is proper as punishment for the commission of the prohibited act. It is an inevitable inference that the Legislature must have intended that the new statute imposing the new lighter penalty now deemed to be sufficient should apply to every case to which it constitutionally could apply." (*Id.* at p. 745.) This includes "acts committed before its passage provided the judgment convicting the defendant of the act is not final." (*Ibid.*) Thus, if an amended statute mitigates punishment, the amendment will operate retroactively to impose the lighter punishment unless there is a saving clause. (*Id.* at p. 748.)

The Legislature may signal its intent by including an express saving clause making the amendment prospective, "or its equivalent." (*People v. Nasalga* (1996) 12 Cal.4th 784, 793.) *People v. Yearwood* (2013) 213 Cal.App.4th 161 held that a provision in Proposition 36, the Three Strikes Reform Act of 2012, § 1170.126, which created a postconviction resentencing procedure similar to the one in section 1170.18, was the "functional equivalent" of a saving clause. (*Yearwood*, at p. 172.) Relying on *Yearwood*, this court has concluded that a defendant who may potentially benefit from retroactive application of Proposition 47 is limited to the statutory remedy of petitioning for recall of sentence in the trial court after the judgment has become final. (*People v. Noyan* (2014) 232 Cal.App.4th 657, 672.)

We agree with the result in *People v. Noyan, supra*, 232 Cal.App.4th 657. The procedure set forth in section 1170.18 applies to a "person currently serving a sentence for a conviction . . . of a felony or felonies who would have been guilty of a misdemeanor under the act . . . ." Defendant is such a person. The act clearly states the manner in which any adjustment in his sentence is to be accomplished. Defendant is limited to the

14

statutory remedy of petitioning the trial court for recall of sentence when the judgment is final.

## DISPOSITION

The judgment is affirmed.


                                                          DUARTE      , J.


We concur:


      RAYE      , P. J.


      MAURO      , J.